FAXTON *v.* FAXON.

Theodore S. Faxton v. Josiah Faxon and others.

*Mortgages: Estoppel.* A mortgagee of lands, who had persuaded a son of the mortgagor, after the death of the latter, and when the land was of little value, and the son contemplated removal to another region, to remain on the farm and take care of it and support the family of his deceased father, upon a promise that the mortgages should never be enforced against the family, is held estopped thereby, after the lapse of several years, during which such son had cultivated said farm and cared for the family, and the land had grown valuable under his tillage, from taking any steps to foreclose the mortgages.

*Heard October 8. Decided October 14.*

Appeal in Chancery from Branch Circuit.

*E. G. Fuller,* for complainant.

*John B. Shipman,* for defendants.

CAMPBELL, J.

Complainant in 1847 and 1849 obtained two mortgages from a half-brother, Ezra T. Faxon (the husband of one, and father of the other defendant), who died intestate in 1850, leaving a family of young children, the oldest being defendant Josiah, who was yet a youth. The property was the mortgagor's farm, then of small value.

These mortgages complainant now seeks to foreclose, and the defendants resist the foreclosure, partly relying on lapse of time, and partly on facts insisted on as an equitable estoppel or agreement against their enforcement. The facts show the mortgage was never actually paid, and the equitable defense is the only one requiring attention.

That defense is, in substance, that after Ezra's death, when Josiah was contemplating a removal to another region, complainant urged and persuaded him to remain and undertake the care of the land and of the younger children, on a promise that the mortgages should never be enforced against them; and that on this urgency Josiah did so, and

carried out all that was desired.    The testimony shows beyond dispute that complainant made the requests very urgently, and exhibited an extreme desire to have them complied with for the sake of the family; and that Josiah acceded to them.    It also shows an unequivocal assurance on various occasions that the securities should be cancelled, and that the family should have the benefit of it.    There is some conflict as to whether there was to be an absolute cancellation at any particular time during complainant's life.    The weight of evidence is rather that he intended to retain them as long as he should think it best; but nevertheless this was all to be done for the benefit of the family. It is quite plain that his only motive, as then expressed, was to make such use only of the papers as might be necessary to protect the family in their title.

Some time in 1860, or thereabouts, complainant endorsed on each mortgage the word, "cancelled," and signed it with his initials.   In 1871 he erased these endorsements, and now prosecutes the securities, which he always retained in his own possession.

This cancellation amounts to nothing beyond showing complainant's intention at that time.

Complainant claims that there was no such specific agreement as should bind him, and also that if there was any, it contemplated action of a testamentary character, and therefore revocable.

If there was an actual agreement, the fact that it contemplated no positive action during life is of no consequence.   A will may be revocable, but an agreement for a sufficient consideration to provide by will for a given object, does not differ from any other contract.    It is no uncommon thing to make bargains intended to operate after death. It would only affect the time and manner of the remedy. If this were a bill to compel a cancellation of securities, and such an agreement were relied on to maintain it, the defense might be set up that it was prematurely brought. But if the contract also provided that no steps should ever

be taken to enforce it against the family, any step taken in that direction would be a violation of the agreement, and open to remedy as far as necessary.

But here the agreement is set up by way of defense, and the question is not whether defendants can have specific relief, but whether complainant has any right to relief against them. It does not necessarily involve an absolute agreement at all.

The complainant may have estopped himself without any positive agreement, if he intentionally led defendants to do, or to abstain from doing, any thing involving labor or expenditure to any considerable amount, by giving them to understand they should be relieved from the burden of the mortgages.—In *Harkness v. Toulmin, 25 Mich. R., 80,* and *Truesdail v. Ward, 24 Mich. R., 117,* this principle was applied,—in the former case to the extent of destroying a chattel mortgage, and in the latter of forfeiting rights under a land contract, where parties had been induced to believe they were abandoned. There is no rule more necessary to enforce good faith than that which compels a person to abstain from enforcing claims which he has induced others to suppose he would not rely on. The rule does not rest upon the assumption that he has obtained any personal gain or advantage, but on the fact that he has induced others to act in such a manner that they will be seriously prejudiced if he is allowed to fail in carrying out what he has encouraged them to expect.

The present case is a very strong one in some respects; for a young man was induced to give up his projects for his own advancement, and devote himself to the preservation of property which did not appear worth the sacrifice. The intention then entertained by complainant was kind and generous, and appealed strongly to the generous impulses of his nephew, who has done what was expected of him. The foreclosure of these mortgages now is a violation of distinct promises and assurances which were the inducement

to the labor and devotion of the defendant.     It would be contrary to equity to permit this to be done.     A promise is not gratuitous which is made to procure such efforts and results; and the person who made the representations which led to them can receive no aid from a court of equity in evading his promises.

The bill should not have been maintained.     The decree below must be reversed, and the bill dismissed, with costs of this court and of the circuit court.

CHRISTIANCY, CH. J., and GRAVES, J., concurred.

COOLEY, J.

I have found it difficult to satisfy myself that there was any intention by complainant to make an agreement for the cancelment of his mortgages as an inducement to any thing to be done by defendants.     He unquestionably expressed an intention to cancel them, at his death, at least, if not before, but in everything done by him it is manifest to my mind that he was actuated by kindly feelings towards the defendants, and what he said to induce defendants to remain on the mortgaged premises was rather in the nature of friendly advice than with any view to bind himself, or to influence their action by any thing he was himself to do. His assurances, however, have undoubtedly been relied upon and acted upon by defendants, and considering the great lapse of time without any claim under the mortgages on the part of complainant, I am not disposed to dissent from the conclusion of my brethren.