## VOGEL v. SHAW
### (First Natl. Bank of Cody, Intervener)
(No. 1659; Dec. 30, 1930; 294 Pac. 687)

For the appellant there was a brief and oral argument by *Ernest J. Goppert,* of Cody, Wyoming.

For the plaintiff and respondent there was a brief by *Kerper and Kerper,* and *Paul R. Greever,* all of Cody, Wyoming, and oral argument by *Mr. Greever.*

RINER, Justice.

This case is here by direct appeal from a judgment of the District Court of Park County, entered in favor of the respondent J. H. Vogel, who was the plaintiff below, and against the appellant and defendant Ernest F. Shaw.

Summarized, the pleadings of the parties are to the following effect: Plaintiff's petition alleged that the owner of a certain building, known as the Neff Building, located in the town of Cody, Wyoming, leased it on October 11, 1923, to the plaintiff for a period of five years at a rental of $75 per month; that on April 22, 1925, the ownership of the property having meanwhile changed, the then owner authorized the plaintiff to sublease the building; that on May 23, 1925, pursuant to such authority, plaintiff subleased the property at a rental of $100 per month to a Mrs. J. F. Files, payment of rentals to begin September 1, 1925—the term of the sublease running from September 1, 1925 until November 1, 1928; that the sublessee took possession of the premises; that this sublease was placed of record in the office of the county clerk of Park county and with knowledge of it the defendant, on or about May 6, 1927, purchased the property aforesaid, and demanded of the sublessee the entire rental of $100 per month; that it was agreed between the parties that the sum of $25 per month—this amount being the difference between the rentals due under the original lease and the sublease, should be deposited in a local bank, to be held by it until the disposition of the controversy between plaintiff and defendant, and that $450 was

thus paid to the bank and so held by it; that plaintiff has demanded of defendant and the said bank payment of this amount, but his demand has been refused and that defendant is indebted to plaintiff in the sum aforesaid. Judgment was asked that the bank be directed to pay to plaintiff money thus held by it.

Defendant's answer put in issue most of the allegations of the petition, though admitting the making of the original lease and the agreement of the parties for the retention by the bank of the several payments of $25 per month. By way of cross petition, after incorporating therein the allegations of his answer and averring that the $450 paid by Mrs. Files to the bank is his property, defendant alleged, in paragraph 3 of said cross petition, that on or about April 28, 1927, he entered into an agreement for the purchase of the property aforesaid; that at and prior to the making of said agreement, the plaintiff solicited the defendant to purchase said property, and represented to the latter that if defendant would buy the property, that plaintiff would assign and transfer to him all rental money due under the Files lease; that defendant, relying upon plaintiff's representations and with the distinct understanding and agreement that plaintiff would do this, made and entered into the written agreement to purchase the property aforesaid; that defendant would not have entered into the agreement of purchase had it not been for plaintiff's representations thus made, and that plaintiff is estopped from claiming the rental money due on the Files' lease. Defendant also alleged, in paragraph 4 of his cross petition, that since the execution of the contract of purchase by him, plaintiff had attempted to withdraw and repudiate his agreement to permit the defendant to collect all the rentals on the Files lease, and for that reason the sum of $25 per month was deposited in the bank and is defendant's property. The cross petition further alleges a demand upon plaintiff and the bank for the sum of $450, and concludes with prayer for judgment against them in that amount.

Plaintiff's reply placed in issue the affirmative averments of the answer and cross petition. During the course of the trial, defendant was allowed to amend his answer by inserting therein paragraphs 3 and 4 of the cross petition.

The cause came on for hearing before the court with a jury in attendance, and at the conclusion of the introduction of defendant's evidence, upon plaintiff's motion, the court instructed the jury to return a verdict in plaintiff's favor. The judgment complained of here was entered upon the verdict so rendered.

After plaintiff had introduced his evidence, the same including proof of the original lease and sublease and the authority to make the sublease in favor of the plaintiff, and the latter had rested his case, defendant offered to prove by his own testimony, among other things, in substance that, on April 28, 1927, plaintiff stated to him, in a conversation had on that day at which a representative of the owner of the property was present, that if he (Shaw) would purchase the Neff Building from its owner for $12,000, plaintiff would turn over to Shaw both the Files lease and plaintiff's lease on that property; that plaintiff said: "Go on up to the attorney's office, fix up the papers to buy the property, and I will turn over the leases and all the rentals beginning May 1, 1927;" that during the conversation aforesaid had with plaintiff on April 28, 1927, defendant Shaw advised plaintiff that he would not be interested in the building at all, unless the leases covering said property and all rentals therefrom should be paid to him, and that he would not consider such purchase if Vogel should retain the $25 difference between the Vogel and Files leases; that the plaintiff assured Shaw that he understood that the "building would not be a good buy and that the defendant Shaw could not afford to purchase the same for $12,000 unless said difference in rental was to be paid to Shaw;" that after this conversation, defendant went with the representative of the owner of the property to an attorney's office and the agreement for the purchase of the property was

drawn up; that on April 30, 1927, Shaw presented a written assignment of the Vogel and Files leases to Vogel with the request that he sign them, to carry out the agreement made two days before; that Vogel declined to sign same, saying: ''I promised to give you those leases as soon as you obtained a deed to the property. You haven't obtained the deed yet and until you do, I want to keep them, because if you don't get the deed, I don't want you to have the leases;'' that Shaw then informed Vogel that he had signed a contract with the owner of the property for delivery of the deed to said premises; that the deed had been prepared on April 28, 1927 and was being taken to Iowa for signature by the owner, and would be promptly returned; that Shaw had paid the owner $2,000 and had agreed to pay the balance of the $12,000 purchase price by assuming a mortgage upon said premises of $10,000; that Vogel agreed with Shaw that the latter should go ahead and accept the deed when it was delivered, and as soon as he obtained the deed, the leases in question would be turned over and assigned to Shaw; and that defendant would not have purchased the building except for the representation of the plaintiff that he would assign and transfer his rights and rentals under said Files lease to Shaw. The record shows that it was admitted by both parties that Shaw bought the building, and that the deed from the former owner to Shaw was dated May 2, 1927.

The offer of proof, as recited above, was objected to by plaintiff, principally upon the ground that the conversation aforesaid was for the purpose of showing an agreement for the assignment of the Files lease, which was, under the statute of frauds of this state, required to be in writing, an oral agreement not being a sufficient assignment of said lease or any interest therein, said lease having at the time mentioned in the offer of proof more than one year to run before its expiration; that the facts offered to be proved, do not constitute an estoppel, and that also under these facts no consideration passed to or was to pass to plaintiff for his as-

signment of the Files lease to the defendant. The trial court rejected the offer of proof, and this ruling assigned and argued here as error appears to present the controlling question in the case.

Both parties seem to concede that a verbal agreement to assign a lease of real property which by its terms will not expire until the lapse of more than one year is void, under the provisions of the statute of frauds of this state. W. C. S. 1920, § 4719; Montana and Wyoming Oil Co. v. Gibson, 19 Wyo. 1, 113 Pac. 784. The real conflict of views between the parties is on the question whether the offered facts constitute an estoppel which by its nature should prevent the plaintiff from invoking the statute of frauds. This necessarily brings us to an examination of the state of the law touching the point involved.

Mr. Pomeroy (Vol. 2, Equity Jurisprudence, § 804) defines equitable estoppel as:

"The effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy."

This definition, for most practical purposes, is a satisfactory one.

Concerning its operation in connection with the statute of frauds, it is said in 25 Ruling Case Law 700, § 343, that:

"It has frequently been asserted as a broad general rule that a court of equity will not permit a party to shelter himself under the defense of the statute and thereby commit a fraud on the other party to the contract. This principle is not limited to any particular class of contracts and has been applied to a contract of employment not to be performed within a year. An equitable estoppel may also be

invoked to preclude a party to a contract from setting up the defense of the statute, and it is now generally recognized that permitting the doctrine of equitable estoppel to operate in effect to transfer title to real estate does not contravene the statute.''

On the same subject a well known text (Bigelow on Estoppel, 6th Ed., p. 640) remarks:

''It has been held too that if A induce B to rent his land to C by promising not to interfere with the collection of rent, A will be estopped from so interfering. So where a person divided a parcel of land and sold it in town lots representing to the purchasers that streets were to be extended through it and bounding the lots accordingly, he was held estopped to deny a dedication to the public.

''Indeed, an intended contract, ineffectual as such by reason of the omission of some formal step required by law, may generate an estoppel when a manifest fraud would result from treating the whole transaction as wanting in validity.''

Quoting from a leading case (Glass v. Hulbert, 102 Mass. 34, 3 Am. Rep. 418) Browne on the Statute of Frauds (5th Ed., p. 584, § 457a) describes the general operation of this equitable principle in the following language:

''The fraud most commonly treated, as taking an agreement out of the Statute of Frauds is that which consists in setting up the statute against its performance, after the other party has been induced to make expenditures, or a change of situation in regard to the subject-matter of the agreement, or upon the supposition that it was to be carried into execution, and the assumption of rights thereby to be acquired; so that the refusal to complete the execution of the agreement is not merely a denial of rights which it was intended to confer, but the infliction of an unjust and unconscientious injury and loss. In such case, the party is held, by force of his acts or silent acquiescence, which have misled the other to his harm, to be estopped from setting up the statute of Frauds.''

The case of Seymour v. Oelrichs, 156 Cal. 782, 106 Pac. 88, 94, 134 Am. St. Rep. 154, is one which very well illustrates the practical application of the doctrine announced by the text writers supra. This decision is the subject of an elaborate note by Mr. Freeman, 134 Am. St. Rep. 172, wherein the strength of its opinion and the "excellence of its carefully compiled matter" are pointed out. It does not appear to have been overruled or questioned, but has been cited with approval and followed in quite recent cases from the same jurisdiction. See Holstrom v. Mullen, 84 Cal. App. 1, 257 Pac. 545; Comer v. Associated Almond Growers, 101 Cal. App. 687, 282 Pac. 532. In the principal case mentioned it appeared that the plaintiff, Seymour, held practically a life position as captain of detectives on the San Francisco police force, at a salary of $250 per month. He resigned this position in consequence of an oral promise on the part of Oelrichs that Seymour would be given a ten year contract of employment at $300 per month. Seymour served in Oelrich's employ for several years and was then discharged, through no fault of his own. He brought action to recover damages for the breach of the contract of employment. After discussing the equitable principle mentioned in Glass v. Hulbert, supra, having pointed out that the plaintiff did not and could not rely upon the mere part performance of a contract for personal services which by its terms was not to be performed within a year, and hence invalid under the statute of frauds, the court said:

"We can see no good reason for limiting the operation of this equitable doctrine to any particular class of contracts included within the statute of frauds, provided always the essential elements of an estoppel are present, or for saying otherwise than as is intimated by Mr. Pomeroy in the words already quoted, viz., that it applies 'in every transaction where the statute is invoked.'

"The question, then, is whether the facts of this case bring it within the principle we have discussed. It is clear that there was such a change of position on the part of plaintiff in his irrevocable surrender of his office in the

police department, induced in fact by his reliance on the promise of defendants and Fair that a written contract for ten years at $300 a month would be given, that he would incur great injury and loss in case the defendants are permitted to rely upon the statute of frauds as a defense. That there would necessarily be such a change of position on his part in the event that he relied upon their promise and accepted their offer was known to them, and the promise was given with this knowledge and with the intent that it should be relied on by him and the change in his position thereby induced. The injury done plaintiff by a repudiation of the promise by defendants under these circumstances would certainly appear to be 'unjust and unconscientious.' ''

And it was held that the defendant was estopped to interpose the statute of frauds as a defense to the action.

So in Faxton v. Faxon, 28 Mich 159, where a mortgagee of lands had persuaded the son of a mortgagor—after the death of the latter and when the land was of small value, the son contemplating at that time a removal to another part of the country—to remain on the land and take care of it and support the family of his deceased father, upon a promise that the mortgage should never be enforced against the family, it was held that the mortgagee would be estopped thereby from taking any steps to foreclose the mortgage after a lapse of several years, during which the son had cultivated the land, cared for the family and made the land more valuable. In the course of reaching this conclusion, the court said:

''There is no rule more necessary to enforce good faith than that which compels a person to abstain from enforcing claims which he has induced others to suppose he would not rely on. The rule does not rest upon the assumption that he has obtained any personal gain or advantage, but on the fact that he has induced others to act in such a manner that they will be seriously prejudiced if he is allowed to fail in carrying out what he has encouraged them to expect.''

Of similar purpose is the case of Witherell v. Kelly, 195 App. Div. 227, 187 N. Y. Sup. 43, 44, where the mortgagee

told the mortgagor "there will be no deficiency judgment against you; we won't bother you any because we think we will get our money out of it." And the mortgagor, in consequence, stipulated that the action of strict foreclosure—one wherein it was impossible to obtain a deficiency judgment—should be modified so as to be one by sale where it was possible to attain such a result. Holding that the mortgagee was, under such circumstances, estopped to claim a deficiency judgment, the court says:

"If the defendant, in reliance upon the assurances of Shedd that there would be no deficiency judgment against him, had just grounds to remain inert and at gaze without further securing himself or without protecting himself against a deficiency, it seems to me that the doctrine of equitable estoppel by representation applies, in that the plaintiff made statements that indicated her abandonment of an existing right of a plaintiff in a foreclosure by sale.

"As a rule, to constitute such an estoppel there must be representation as to a fact past or present, but there is a well recognized exception that applies in this instance."

After quoting from Union Mutual Insurance Co. v. Mowry, 96 U. S. 547, 24 L. Ed. 674,—a case presently to be mentioned—and also Faxton v. Faxon, supra, the opinion declares that:

"The doctrine of estoppel in pais is applicable in law as in equity. Williamsburgh Sav. Bank v. Town of Solon, 136 N. Y. 465-474, 32 N. E. 1058. It is not essential that there should have existed in Shedd the intention to mislead. Continental Nat. Bank v. Nat. Bank of Com., 50 N. Y. at page 583. Equitable estoppel need not rest upon consideration or agreement or legal obligation. Rothchild v. Title Guarantee & Trust Co., 204 N. Y. at 464, 97 N. E. 879, 41 L. R. A. (N. S.) 740."

In Stevens v. Turlington, 186 N. Car. 191, 119 S. E. 210, 212, 32 A. L. R. 870, the action was one to remove cloud from title and restrain the mortgagee defendant from executing a deed to the purchaser at the mortgage sale, and

it was alleged that the defendant orally agreed with plaintiff to release the land from her mortgage, and in reliance upon that promise he bought the land. The defendant plead that the promise was not in writing, and consequently not enforceable under the statute of frauds. Holding that an equitable estoppel arose in favor of the plaintiff, the following language was used in the course of the opinion filed in the case:

"It will be observed that this suit is not between the mortgagor and the mortgagee; but A. F. Stevens, plaintiff herein, is a purchaser of the land for value, and he alleges that, in buying the property, he relied upon the defendant's promise to release the same from the operation of her mortgage. This, under authority of Gorrell v. Alspaugh, 120 N. C. 362, 27 S. E. 85, if found to be a fact, would constitute an equitable estoppel against the defendant. Miller v. Pierce, supra" (104 N. C. 389, 10 S. E. 554).

Where an owner orally promised to lease his premises for a term of ten years at a stipulated rental to a tenant in possession of other property, and the tenant, relying thereon, surrendered the lease he held on the other land and incurred expense in moving and in placing valuable improvements on the owner's premises, it was held, in Halligan v. Frey, 161 Iowa 185, 141 N. W. 944, 946, 49 L. R. A. (N. S.) 112, that the owner was estopped to set up the statute of frauds in order to insist on a tenancy at will at an increased rental, and the court used this language:

"Of course, the mere denial of an oral agreement or a refusal to perform will not be sufficient to prove fraud. McClain v. McClain, 57 Iowa 167, 10 N. W. 333; Gregory v. Bowlsby, (115 Ia. 327, 88 N. W. 822) supra. But where a promise is made, such as is shown in this case, and on the strength thereof plaintiff surrenders another lease, goes to the expense of moving and places valuable improvements upon the property which are designed for that property alone, and is finally presented with a written lease, drawn by the defendant covering the agreement as originally made

which lease he signs on his part and pays rent thereunder for ten months, and then is threatened with removal unless he consents to an advance in the rental to $60 per month, it is perfectly plain that defendant is attempting to use the statute of frauds as an instrument whereby to perpetrate a fraud upon the lessee and equity will give such lessee protection. If it did not, it would be a humiliating confession that a court of chancery is helpless and incapable of affording relief where the law is deficient, and is unable to prevent fraud and deception.''

The substance of the decision in Banning v. Kreiter, 153 Cal. 33, 94 Pac. 246, 247, is accurately shown by the following paragraph taken from the opinion in that case:

''It is well settled that, while, generally, a representation to raise an estoppel, where the negotiations have ended in a contract, must relate to an existing fact, and not be a mere expression of opinion or a promise of future performance, a well-recognized exception to the rule is presented where the statement relates to an intended abandonment of an existing right, and is made to influence others, and they have been influenced by it (Union Mutual Life Ins. Co. v. Mowry, 96 U. S. 544, 24 L. Ed. 674) ; and so, where purchases are made upon representations by the seller that abutting property owned by him will be maintained either as a public street or private way for the benefit of the purchaser, here is the expression of an intended abandonment of a seller's existing right which will support an estoppel, if the purchaser has relied upon it. Prescott v. Edwards, 117 Cal. 303, 49 Pac. 178, 59 Am. St. Rep. 186.''

Likewise, in Hand v. Nix, 39 Tex. Civ. App. 403, 87 S. W. 204, where the defendant orally agreed to convey a piece of land to plaintiff if the latter would support and care for defendant's mother during her life, and plaintiff, in reliance upon this promise, took the mother to his home, cared for her over a period of years until her death, and made valuable improvements upon the land, as well as paying the taxes upon it, it was held that the defendant was estopped to object to proof of the contract on the ground that it was within the statute of frauds.

Mr. Justice Field, in the case of Union Mutual Insurance Co. v. Mowry, mentioned above, has used the following oft quoted and very clear language concerning estoppel arising out of a party's representations to another who has relied thereon to his damage:

"An estoppel from the representations of a party can seldom arise, except where the representation relates to a matter of fact, to a present or past state of things. If the representation relate to something to be afterwards brought into existence, it will amount only to a declaration of intention or of opinion, liable to modification or abandonment upon a change of circumstances of which neither party can have any certain knowledge. The only case in which a representation as to the future can be held to operate as an estoppel is where it relates to an intended abandonment of an existing right, and is made to influence others, and by which they have been induced to act. An estoppel cannot arise from a promise as to future action with respect to a right to be acquired upon an agreement not yet made.

"The doctrine of estoppel is applied with respect to representations of a party, to prevent their operating as a fraud upon one who has been led to rely upon them. They would have that effect, if a party who, by his statements as to matters of fact, or as to his intended abandonment of existing rights, had designedly induced another to change his conduct or alter his condition in reliance upon them, could be permitted to deny the truth of his statements, or enforce his rights against his declared intention of abandonment."

The frequently cited case of Dickerson v. Colgrove, 100 U. S. 580, 25 L. Ed. 618, is quite instructive on the point we have before us. There one C. owned certain land and died, leaving as his only heirs a son and a daughter. On March 3, 1853, the daughter and her husband conveyed all the land to M. by warranty deed. M. took possession of the property. Prior to April 1, 1856, M. learned of the existence of C's son and that he lived in California. M. caused a letter to be written to the son, inquiring whether he made any claim to the premises. The son wrote to his

sister in Michigan a letter wherein he said "you can tell Mr. Morton for me he need not fear anything from me. * * * I intended to give you and yours all my property there and more if you need it." The contents of this letter came to the knowledge of M., who took no measures to perfect his title nor to procure redress from the daughter and her husband who had conveyed and been paid for the whole of the property, notwithstanding they owned but half. Thereafter M. conveyed to the defendants, who were numerous and who also went into possession of the premises so transferred. Subsequently the son in California, by quitclaim deed, passed an undivided one-half of the property to the plaintiffs, who brought a suit in ejectment against M. and his grantees for the land covered by the quitclaim deed. The trial court held that the son's grantees were bound by an estoppel in pais and gave judgment against them. Affirming this judgment and citing with approval the language of Judge Campbell in the case of Faxton v. Faxon, supra, the Supreme Court of the United States significantly said:

"The estoppel here relied upon is known as an equitable estoppel, or estoppel *in pais*. The law upon the subject is well settled. The vital principle is, that he who, by his language or conduct, leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted."

Finally, mention may be made of another case quite pertinent on principle to the question before us—Fay v. Valentine, (Mass.) 12 Pick. 40, 22 Am. Dec. 397. The decision is interesting in that it was rendered by the eminent court over which Chief Justice Lemuel Shaw presided and Mr. Hoar represented the defendant who succeeded in the suit. There the plaintiff brought his bill against the defendant to redeem from a prior mortgage which the latter had purchased and it had been assigned to him. Each party, of

course, derived his title from the same source—Belknap, the mortgagor. The following excerpt from the opinion of the court outlines the defendant's defense and the court's view concerning it:

"The defendant states in his answer, 'that before he received the deed of assignment from Lawson Valentine, he applied to the plaintiff to induce him to purchase of Lawson, and that the plaintiff refused to purchase, or to pay any thing towards redeeming the mortgage to Elizabeth Price; and that he urged the defendant to purchase in said mortgage, and assured him that if he would purchase, he the said Fay would never redeem the same, as he considered the land not to be worth more than the amount due on the mortgage. The answer further avers, that the defendant, confiding in the plaintiff's assurances, did make the purchase, and did afterwards build and erect a dwellinghouse on one of the tracts mortgaged, at a great cost and expense, and did otherwise greatly improve and increase the value of the premises before the plaintiff notified him of his intention to redeem the premises; that the defendant kept no account of these expenditures, relying upon the plaintiff's assurances that he should not redeem, and that it would never therefore be necessary to state an account; and that by reason of loss of papers and memoranda consumed and destroyed by fire, in the burning of his dwellinghouse, he is now unable to render an account correctly and fully.'

"These facts appear to us to be substantially proved by the evidence, and to amount to a good equitable defence. The assurances made by the plaintiff that he would not redeem, are fully proved by the testimony of Joseph Belknap and Nathaniel Parker, and we can perceive nothing in their narration of facts which is incredible or improbable. Considering then these assurances as satisfactorily proved, we are of opinion, that the plaintiff is bound by them in this suit. It is objected that the interest of a mortgagee can neither be transferred nor relinquished by parol. Most certainly it cannot, but no party, whatever may be his interests or legal rights, can have relief in a court of equity, unless his claim is founded on the basis of good faith and justice. It is a familiar rule, that he who seeks equity must do equity. He must not expect the aid of a court of equity to sanction the violation of his engagements, although there may be no legal means to enforce them. Nor will he be al-

lowed to profit by the mistakes of another, caused by his own misrepresentation or concealment. Nor can he be allowed to set up the statute of frauds for the purpose of protecting fraud. Rob. on Frauds, 130. It is on this ground, that specific performance of parol contracts within the statute of frauds is decreed, where there has been a part-performance. The same principle is maintained through all the authorities.''

After reviewing a number of earlier English cases, the opinion proceeds to its conclusion, dismissing the bill, thus:

''So where a man who has a title and knows it, stands by, and either encourages another to purchase, or does not disclose his title, he will not be allowed in a court of equity to set up his claim against the purchaser. Savage v. Foster, 9 Mod. 35; Niven v. Belknap, 2 Johns. N. Y. 573; Evans v. Bicknell, 6 Ves. 190; Bac. Abr. Fraud, B. A similar principle is recognized by Parsons C. J. in the case of Foster v. Briggs, 3 Mass. R. 313.

''Cases and authorities might be multiplied, but it is quite needless. No principle can be better established, than that on which we decide this case. If the plaintiff encouraged the defendant to purchase, promising him not to redeem the first mortgage, as we think the evidence proves he did, it would be manifestly against equity to allow him now to violate his engagements, to the prejudice of the defendant.''

Of similar purport is the case of Southard v. Sutton, 68 Me. 575.

Applicable with the cases cited above, see also 21 C. J. 1142-3, §§ 144, 145; Id. 1241, § 247; 27 C. J. 338-340, §§ 425, 426; and I Williston on Contracts 309, § 139; II Idem 1407-8, § 739, and cases cited. See also Rogers v. Standard Life Insurance Co., 54 S. Dak. 107, 222 N. W. 667; M. H. Metal Product Corp. v. April, 251 N. Y. 146, 167 N. E. 201; Kingston v. Walters, 16 N. Mex. 59, 113 Pac. 594; Fairhaven Gold Dredging Co. v. Golden Center Mines, 7 Alaska 669; Cameron v. Townsend, 286 Pa. 439, 133 Atl. 632.

In the case at bar, judging by the citations made by counsel, there is no serious difference as to the true state of the law concerning equitable estoppel in connection with the application of the statute of frauds. For instance, respondent relies upon the case of Dechenbach v. Rima, 45 Ore. 500, 77 Pac. 391, 78 Pac. 666, 667, where the court said in the course of its opinion:

"Estoppel in pais arises from misrepresentation or concealment of a material fact, and rests on the ground that it would be a fraud in a party to assert what his previous conduct has denied when others have acted on the faith of that denial. Such an estoppel can rarely arise unless it has reference to a present or past state of things, or relates to an intended abandonment of an existing right; and it has no application to a mere breach of a promise or covenant relating to the future."

The difficulty seems to be in the application of the law, as stated, to the concrete facts, and this difficulty appears to have also beset the courts. It is not easy to reconcile the disposition of the case last mentioned with the result attained in the case of Halligan v. Frey, supra, though the opinion in the former asserts that what was done by Rima was not referable to the alleged oral agreement.

While, as said in 10 R. C. L. 689, § 19, "an equitable estoppel rests largely on the facts and circumstances of the particular case and consequently any attempted definition usually amounts to no more than a declaration of an estoppel under those facts and circumstances," here, however, we are quite clear under the authorities reviewed above, that the principle of equitable estoppel is applicable. According to the offer of proof, the defendant was told by plaintiff that if he (Shaw) would buy the property for $12,000, he (Vogel) would assign the Files lease to him. Vogel fully realized when he made this statement that a purchase of the premises for that sum would not be a "good buy," and Shaw "could not afford to purchase" unless the Files lease was surrendered, and he told Shaw so. On the

faith of these representations—obviously the declaration of an intended abandonment by Vogel of an existing right (the right to the Files lease)—Shaw signed the contract for the purchase of the property at $12,000, paid $2,000 in cash, and irrevocably changed his position for the worse unless he may have the benefit of the Files lease. He has no remedy as against the former owner of the property and none against Vogel if the latter's conduct and representations in the transaction be disregarded. Such a conclusion, so far as Vogel is concerned, would, we think, work a fraud upon Shaw. Over and over again the courts have said that they will not allow the defense of the statute of frauds when in so doing it becomes an instrument for perpetrating fraud. Vogel having used the promise of an intended abandonment of his rights under the Files lease to induce Shaw to do what he otherwise would not have done, should not—in the language of the court of last resort of the nation—"subject such person to loss or injury by disappointing the expectations upon which he acted." In our judgment the offered proof should have been received, and error was committed by the trial court in not doing so.

Some other minor questions have been discussed in the briefs of counsel, but as they are unlikely to arise on a new trial of this case in view of what has been said in this opinion, we do not deem it necessary to consider them.

For the error committed in the course of the trial as indicated herein, the judgment must be reversed, and a new trial ordered.

*Reversed.*

Blume, C. J., concurs.

Kimball, Justice. (Dissenting)

Reduced to essentials, the excluded evidence was that plaintiff orally promised to assign to defendant the Files lease if defendant would buy the property from the owner for $12000, and defendant, relying on the promise and believing the lease would be assigned to him, bought the

property for that price. It is conceded that the lease was for more than one year and, therefore, the oral promise to transfer it was void or at least unenforceable under the statute of frauds. C. S. 1920, § 4719. The defendant, however, contends that the same relief that he would have by enforcement of the contract can be obtained by application of the principle of equitable estoppel. The contention is approved by the court's decision, in which I am unable to concur.

There is no claim of misrepresentation or concealment of any fact. It is commonly said that a representation to create an estoppel must be of an existing fact. A promise, if binding at all, must be binding as a contract. Pollock on Contracts (8th Ed.) pp. 558, 752-759; Maddison v. Alderson, L. R. 8 App. Cas. 461, 473. If the promise be one which under the statute of frauds must be in writing, the promisee can protect himself in advance by insisting on compliance with the statute. 13 Halsbury's Laws of England, 377-378; Insurance Company v. Mowry, 96 U. S. 544, 548, 24 L. Ed. 674; Dechenbach v. Rima, 45 Or. 500, 77 Pac. 391, 78 Pac. 666.

It is my view that the offered evidence would have proved only plaintiff's breach of his oral promise after defendant's performance of the act requested as consideration for the promise. The difficulty I cannot overcome is in the application of principles of estoppel to such a case. It is true that in this country, since the case of Insurance Company v. Mowry, *supra,* it is frequently intimated that a statement as to an ''intended abandonment of existing rights'' may have the same effect in the law of estoppel as a representation of fact. And that must be the basis of the defendant's contention and the court's decision in the case at bar. With this decision as a precedent it is difficult to see why every contract void under the statute of frauds may not be made effectual by estoppel when acted on by the promisee and not performed by the promisor.

I cannot now undertake to discuss separately the many cases cited in the opinion of my associate. Most of them, in my opinion, could have been decided the same way on the theory of contract. Those in which the abandoned right was an interest that could be transferred without the formality of a writing are clearly not in point. In those in which the abandoned right was an interest in land within the statute of frauds, the stated facts usually show possession and improvement of the land by the party claiming the estoppel, although in several such cases the effect of the statute of frauds is not discussed.

I admit that a statement of an intention to abandon a right may be the basis of what in recent years has been called "promissory estoppel." See Williston on Contracts, § 139; Allegheny College v. National etc. Bank, 246 N. Y. 369, 159 N. E. 173, 57 A. L. R. 980; 5 N. Y. U. Law Rev. 153; 63 Am. L. Rev. 33; Restatement of Law of Contracts, § 90. And I can see the possibility of the application of the doctrine of promissory estoppel to the facts of the case at bar. It might be doubted that defendant's purchase of the property was requested by plaintiff as consideration for plaintiff's promise to assign the lease. In other words, plaintiff's promise to assign the lease might be considered a gratuitous promise on a condition. Williston, § 112. In that case, defendant, having bought the property relying on plaintiff's promise, might invoke the doctrine of promissory estoppel, which probably is nothing more than the equitable principle stated in Parsons on Contracts (Vol. 3, p. 359) where the author, after mentioning the general rule that equity will not enforce a gratuitous promise, adds:

"And yet if the promisee, on faith of the promise, does some act, or enters into some engagement or arrangement, which the promise justified, and which a breach of the promise would make very injurious to him, this, equity might regard as confirming and establishing the promise, in much the same way as a consideration for it would."

I think the application of the doctrine of promissory estoppel in the case at bar, if necessary at all, only serves to supply the element of consideration for plaintiff's promise. When the contract is established, either with or without the assistance of promissory estoppel, there still remains the question whether the statute of frauds prevents its enforcement. Williston, § 139, p. 312, note 40. As it is admitted that the offered evidence would have proved a contract within the statute, and not contended that there was such part performance as would take it without the statute, I think the ruling excluding the evidence was proper, and that the judgment should be affirmed.