Thurston F. KINCHELOE, Michael L. Gill, David A. Rock, Michael C. Albee, Albert Grant Langston, Walter W. Roche, Dwain D. Dickman, Thomas D. Hall, Leonard McAffee and Eddie R. Miller, Appellants (Plaintiffs),

v.

Vito MILATZO, Angie G.F. Milatzo, American Construction & Excavating Company, David L. Ayers, Country West Mobile Homes, Inc., and Frank L. Neal, Appellees (Defendants).

No. 83–100.

Supreme Court of Wyoming.

Feb. 22, 1984.

A. Joseph Williams of Guy, Williams, White & Argeris, Cheyenne, for appellants.

Bert T. Ahlstrom, Jr., and Kay Snider Coffman, Cheyenne, for appellees Vito Milatzo and Angie G.F. Milatzo.

Walter C. Urbigkit, Jr. and Carole Shotwell of Urbigkit, Whitehead, Zunker & Davidson, P.C., Cheyenne, for appellees Country West Mobile Homes, Inc. and Frank L. Neal.

ROSE, Justice.

This case originated in the district court where the plaintiffs-appellants, as purchasers of lots from various defendants-appel-

lees, unsuccessfully sought to restrain appellees from selling or otherwise disposing of adjoining properties in which some appellees were owners and others were possessed of contractual interests.

The trial court denied injunctive relief and we will affirm.

The appellants purchased lots from the appellees, the Milatzos, American Construction & Excavating Company and David L. Ayers, between March 31, 1978 and December 16, 1980. All of these properties were located within the parameters of a plat, properly executed, approved, filed on August 30, 1978, and designated as "Milatzo Subdivision, *First Filing*".[1] The lots in this subdivision are one-half acre in size.

Prior to the filing and recording of the First Filing plat, the Milatzos had caused a map to be prepared. This map included the area contemplated by the First Filing together with adjoining land which later came to be known as Country West Subdivision. Following is a reduced copy of this map for easy reference.

MILATZO SUBDIVISION

This map, which never became a recorded plat, was designated "Milatzo Subdivision" and it shows all included lots to be one-half acre in size. When the plaintiffs-appellants purchased their lots in the First Filing, which contained only one-half-acre lots, they had been shown this map as it hung on the walls of the Milatzos' real estate agent's office. The real-estate personnel and perhaps others who were interested in selling lots in the First Filing had stated that the lots depicted by the map were no less than one-half acre in size.

The appellants had also visited the property where all the lots indicated on the Milatzo Subdivision map were staked on the ground as one-half-acre lots. The area, identified on the map as the Country West Subdivision, was not platted at any time during which the appellants were purchasing lots in the First Filing area—nor has it ever been platted. Some of the appellants had also been made familiar with covenants which—by reference to an existing plat—restricted lot sizes to be no less than one-half acre. The court held these restrictions

1. This subdivision area will usually be referred to as "First Filing."

to be applicable to only those lots which were contained in the First Filing, but the appellants testified that when they purchased their properties in the First Filing they were led to believe and did believe that the covenants were applicable to all lots appearing on the Milatzo Subdivision map (reproduced, supra).

Following the platting of the First Filing and the signing of covenants, the defendants-appellees American Construction & Excavating Company and David L. Ayers obtained a number of lots in Milatzo Subdivision First Filing in repayment for services rendered and materials furnished. In their effort to sell their First Filing lots, the Milatzos engaged and gave a listing to the Key Real Estate Co., Ltd. Mr. Ayers and American Construction & Excavating Company also undertook sales of such properties as were owned by them in Milatzo Subdivision First Filing.

Subsequent to the sale to the appellants of various lots in the First Filing, the Milatzos entered into a lease option with Frank L. Neal of Country West Mobile Homes, Inc. to sell and develop what was later designated as the Country West Subdivision. This area adjoined the First Filing area, and is illustrated as being within the confines of the Milatzo Subdivision map, supra. A proposed plat of this subdivision was prepared, showing lots which were one-quarter acre and smaller, and this plat was approved by all of the appropriate regulatory bodies although the document has never been recorded. These threatened Country West Subdivision lot transfers are the sales which the appellants seek to enjoin for the reason that the platted lot sizes are allegedly in violation of the oral representations, promises and covenants described above.

## Contention of the Parties

In the trial court and in this court, the appellants rely upon the covenants, statements of the appellees and their agents, inspection of the properties and the map hanging upon the real estate company wall as representations from which, they contend, injunctive relief should flow, thus precluding the sale of any lot or lots in the proposed adjoining Country West Subdivision area since all lots in that proposed subdivision are to be less than one-half acre in area.

The appellees, on the other hand, urge that, while it is true that it was their original intention that all residential lots in the entire area designated as the Milatzo Subdivision would be no less than one-half acre in size, they had never made any written, oral or other form of legally binding representations to the appellants to the effect that the lots of the Country West Subdivision area would be platted and sold as one-half-acre lots. The appellees urge that the appellants were, at all times, on notice or chargeable with notice that appellees were not obligated to develop this adjoining land with one-half-acre lots because of the language of the covenants, the oral representations that were made, the information contained in the deeds and the title insurance commitments and policies, and by reason of the fact that a plat of Country West was not on file. With respect to the covenants which the Milatzos and David Ayers signed and recorded, the appellees say that it was their intention, and it is apparent on the face of the instrument itself, that the contained restrictions were to apply only to lots in the First Filing.

## The Issues

The appellants describe the issues for our review as follows:

1. "Whether the protective covenants apply only to lots included in the *First Filing* of Milatzo Subdivision."
2. "Whether the statute of frauds bars plaintiffs from the requested injunctive relief."
3. "Whether plaintiffs are legally entitled to have defendants enjoined from dividing lots into less than one-half acre in size on the theory of promissory estoppel."

## Legal Theories of the Appellants

■ The appellants' argument that the developers of the Country West Estates

should be enjoined from subdividing the land into small lots is based on three different theories: (1) written protective covenants; (2) promissory estoppel; and (3) common scheme or plan. Our discussion of the common-scheme-or-plan contention will flow from our disposal of the covenant, statute-of-frauds and estoppel issues, and we will not, therefore, separately address this concept. Furthermore, except as the appellants address the protective-covenant, statute-of-frauds and promissory-estoppel topics, they themselves do not support the common-scheme-or-plan theory in their brief with cogent argument or authority. This court will not consider alleged error that is supported only with perfunctory argument and no authority. *Barnette v. Doyle*, Wyo., 622 P.2d 1349 (1981).

### Legal Theories of the Appellees

The appellees argue that the covenants in question only apply to the First Filing, the statute of frauds operates to render null and void any oral representations made by the appellees, and the *doctrine of promissory estoppel* does not, under the facts of this case, serve to defeat the effectiveness and applicability of the statute of frauds.

### Restrictive Covenants

On June 27, 1979 the Milatzos and David L. Ayers, owners of lots in platted subdivision First Filing, caused restrictive covenants to be recorded. These covenants provided, by reference to an existing plat, that the lots which the covenants contemplated were to be no less than one-half acre in size. The appellants say that the language of the covenants was indefinite and subject to court interpretation. They go on to urge that the trial court was in error when it decided that it was the intent of the parties—as that intent is gleaned from the covenants and all evidence of record—that the covenants were to apply to the lots in the First Filing only. The appellants contend that Ayers and the Milatzos intended that the covenants should be held to apply to all the area contained in the Milatzo Subdivision, and therefore the half-acre

limitation contemplated by the covenants defines the lot size, not only in the First Filing, but also in the Country West Subdivision area (see map, supra). The appellees' position is that the covenants apply only to the lots contained in the area designated on the map, supra, as *"First Filing."*

The trial court agreed with the appellees' contention on this issue, and so do we.

The pertinent provisions of the protective covenants are the following:

"The undersigned, being the present owners of some of the following described real estate situated in Laramie County, Wyoming; towit:

*"Milatzo Subdivision, First Filing*, City of Cheyenne, Laramie County, Wyoming

"do hereby make this Declaration of Protective Covenants applicable to all lands owned by the undersigned and separately ratifying and adopting this declaration.

\*     \*     \*     \*     \*     \*

"6. *Platted lots presently platted* for a residential development shall not be divided for the construction of more than a one-family dwelling unit." (Emphasis added.)

With respect to these provisions, the court said in his decision remarks from the bench:

"The protective covenants were designed by David Ayers and by Mr. and Mrs. Milatzo. The recorded ones refer to land described as Milatzo Subdivision, First Filing, City of Cheyenne, Laramie County, Wyoming. And then after that description the paragraph continues, 'and do hereby make this declaration of protective covenants applicable to all lands owned by the undersigned and separately ratifying and adopting this declaration.'

" \* \* \* [R]estrictions upon the use of land are normally fairly narrowly viewed."

The court then went on to say that it does not seem "sensible" to interpret the covenant language to apply to property outside the First Filing which would include Ayers'

and the Milatzos' homes and other property wherever located. The court then observed:

" * * * [I]t seems to be much more sensible to apply the protective covenants to when it says all lands, meaning all lands within the subdivision that has been described above. And that will be the construction that the Court will adopt, and would limit the application of the declaration of protective covenants to the land in Milatzo Subdivision First Filing."

The court addressed the ¶ 6 language of the covenants, supra, when the judge said:

"Even if we went beyond that and expanded it, let's say to lands that were proposed in this area to be developed, the protective covenants, to my mind, other than paragraph 6, do not require half-acre lots. It's just simply not contained in the covenants anywhere. And paragraph 6 says that, 'Platted lots presently platted for a residential development shall not be divided for the construction of more than a one-family dwelling unit.'

"Well, you might say that does it, except there was not land platted beyond first filing, and the platting process represents the adoption and acceptance of the plat by the authorities who are by law required to perform that function, and that function simply never occurred in this case.

"So I can't say by either construction, and I can't say by implication, that this matter is covered by the declaration of protective covenants."

We find the trial court's analysis to be accurate and perceptive.

When construing restrictions upon the free use of land, the rules of *Kindler v. Anderson*, Wyo., 433 P.2d 268 (1967), are applicable. In *Kindler*, we said:

" * * * Restrictions upon the use of land, being in derogation of the common law, are not favored, are to be strictly construed, will not be extended by implication, and in case of doubt the restrictions will be construed in favor of the free use of the land. *Wahrendorff v. Moore*, Fla., 93 So.2d 720, 724; *Naiman v. Bilo-*

*deau*, Me., 225 A.2d 758, 759; *Gardner v. Maffitt*, 335. Mo. 959, 74 S.W.2d 604, 607, 95 A.L.R. 452; *Edney v. Powers*, 224 N.C. 441, 31 S.E.2d 372, 374; *Latchis v. John*, 117 Vt. 110, 85 A.2d 575, 577, 32 A.L.R.2d 1203; 20 Am.Jur.2d, Covenants, Conditions, and Restrictions, § 187, pp. 755, 756." 433 P.2d at 271.

We went on to add the caveat that where the language imposing the restriction is clear and unambiguous the rule of strict construction does not apply, citing *Reetz v. Ellis*, 279 Ala. 453, 186 So.2d 915, 918 (1966) and *Donald E. Baltz, Inc. v. R.V. Chandler & Co.*, 248 S.C. 484, 151 S.E.2d 441, 443 (1966). See also *Remilong v. Crolla*, Wyo., 576 P.2d 461 (1978) for the same propositions.

The appellants urge that the covenants may be read to imply that they apply to the Country West Subdivision area. We are bound, however, to the rule which holds that implied covenants are not favored in the law and will not be found to exist unless the language of the instrument leads unerringly to the conclusion that the parties intended that the covenants attach. See *Ready v. Texaco, Inc.*, Wyo., 410 P.2d 983 (1966).

█ Given these rules of construction, the language of the covenants and the testimony of the witnesses, we hold that the court was correct when it held the covenants to apply only to the First Filing area. The plain language of the covenant document, taken with the testimony of the witnesses, points to that conclusion. The record leaves no room for any other resolution of the issue—and we so hold.

*Promissory Estoppel and The Statute of Frauds*

The appellants urge that, in the event the court finds, as we do, that the recorded covenants do not serve to establish lot size in the Country West Subdivision area (map, supra), the appellees are nonetheless estopped from selling lots in that subdivision which are less than one-half acre in size, because of oral representations which some

of the appellants or their representatives made to the appellees while the appellees were purchasing lots in the First Filing. The appellants argue that they had a right to rely upon these representations and that they did rely upon them to their detriment.

The appellees, while denying that any such oral representations were made as would support injunctive relief, respond with the assertion that, in any case, the alleged oral restrictions upon the use of their Country West property are in violation of the statute of frauds and are therefore of no force and effect. The pertinent portion of the statute of frauds, § 16–1–101 (now renumbered as § 1–23–105), W.S.1977 provides:

"(a) In the following cases every agreement shall be void unless such agreement, or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith:

\*　　\*　　\*　　\*　　\*　　\*

"(v) Every agreement or contract for the sale of real estate, or the lease thereof, for more than one (1) year;"

The trial court agreed that the oral representations were within the statute, relying upon our opinion in *Remilong v. Crolla*, supra, 576 P.2d 461. In his memorandum opinion the trial judge wrote:

"The defendants [appellees here] placed considerable reliance on the contention that the one-half acre lot oral restriction sought to be enforced by injunctive relief violates the statutes of frauds. Indeed, it does as such restrictions have been characterized by the Wyoming Supreme Court in *Remilong v. Crolla*, Wyo., 1978, 576 P.2d 461, 464 \* \* \*."

The court then observed that the plaintiffs (appellants here) seek to avoid the statute of frauds by urging facts which will invoke the doctrine of promissory estoppel. In this regard, it was the trial judge's observation that this court held in the Remilong case that promissory estoppel could, in certain circumstances, serve to avoid the operation of the statute of frauds. The judge quoted from *Remilong v. Crolla*, supra, as follows:

"\* \* \* \* The doctrine of promissory estoppel is equitable in nature and is to be employed in a manner consistent with the purposes behind the statute of frauds 'in limited circumstances.' *Remilong v. Crolla*, page 465."

The trial court correctly analyzed our holding in *Remilong v. Crolla*, supra.

In *Remilong*, this court was called upon to consider the relationship between the statute of frauds and promissory estoppel. Remilong had sold a portion of his land to Crolla and orally promised that trailers would never be permitted on the remaining portions. Remilong breached that promise and Crolla sued to enjoin the breach. We held that a promise on the use or nonuse of land was an "interest in real estate" and hence within the statute of frauds. In Remilong we said:

"\* \* \* \* An agreement restricting the use of land is described in many cases and considered to be a negative easement, *Huggins v. Castle Estates, Inc.*, 36 N.Y.2d 427, 369 N.Y.S.2d 80, 330 N.E.2d 48; *Bennett v. Charles Corporation*, W.Va., 226 S.E.2d 559, 563; *Putnam v. Dickinson*, N.D., 142 N.W.2d 111, 124; *Fort Dodge, Des Moines & Southern Railway v. American Community Stores Corporation*, 256 Iowa 1344, 131 N.W.2d 515, 521. When its establishment is sought in equity it has been treated or described as an equitable estate or interest in land, *Turner v. Brocato*, 206 Md. 336, 111 A.2d 855, 861, and cited authorities." 576 P.2d at 463.

We went on to say:

"\* \* \* \* It would appear of particular importance that such restrictive covenants be classified as interests in land without reference to particular terminology because of their increasing importance and use in our modern-day society. We would then hold that this asserted agreement creating a restrictive covenant upon appellants' land was within the prohibition of the statute of frauds, *Frank v. Visockas*, 356 Mass. 227, 228–229, 249 N.E.2d 1; *Cottrell v. Nurnberger*, 131

W.Va. 391, 47 S.E.2d 454, 456, 5 A.L.R.2d 1298; *Droutman v. E.M. & L. Garage, Inc.,* 129 N.J.Eq. 545, 20 A.2d 75, 76; Annotation 5 A.L.R.2d 1316, 1320–1322; 5 Powell on Real Property, § 672, pp. 152–153 (1976); A.L.I. Restatement of the Law, Property, § 522, p. 3165 (1944)." 576 P.2d at 463.

Even though we found the oral agreement to fall within the ambit of the statute of frauds, we wondered what effect the doctrine of promissory estoppel had upon the statute when we observed that:

"This case poses the direct question of whether equitable, or particularly promissory, estoppel may be used to defeat the statute of frauds and result in the creation of a restrictive covenant, a negative covenant, or equitable servitude upon the lands of the Remilongs." 576 P.2d at 464.

We then held that in certain limited circumstances, where it was necessary to avoid fraud, equitable or promissory estoppel would serve that purpose. The touchstone language of the opinion is this:

"Although this court has recognized the almost universal rule that restrictions upon the use of lands are not favored, we have also recognized that equity does have a role to play in limited circumstances, *Kindler v. Anderson,* Wyo., 433 P.2d 268, 271; *Metcalf v. Hart,* 3 Wyo. 513, 27 P. 900, 31 Am.St.Rep. 122, affirmed 31 P. 407; *Vogel v. Shaw,* 42 Wyo. 333, 294 P. 687, 75 A.L.R. 639; *Forde v. Libby,* 22 Wyo. 464, 143 P. 1190. *We speak of limited circumstances because the declared legislative policy encompassed in the statute of frauds should be departed from only when such action is necessary to 'avoid the fraud, and accomplish what justice and good conscience demand,'* Metcalf v. Hart, supra, 27 P. at 913. Also, see *Roberts Construction Company v. Vondriska,* Wyo., 547 P.2d 1171, 1181. *To accomplish the purposes of the statute of frauds, it may be necessary for a court to uphold oral agreements.*

*Tucker v. Owen,* 4 Cir., 94 F.2d 49, 52." (Emphasis added.) 576 P.2d at 465.

This is another way of saying, as we have said before, that we will not permit the statute of frauds to become an instrument of fraud, *Vogel v. Shaw,* 42 Wyo. 333, 294 P. 687 (1930).

We now examine the question which asks whether or not, under the facts and the law of this case, the statute of frauds should operate to render void the alleged oral representations of the appellees or whether they are estopped from successfully espousing this defense according to the promissory estoppel teachings of *Remilong v. Crolla.* In other words, we undertake the examination with the following question present in our minds:

Did the appellees or their agents perpetrate a fraud upon the appellants from which equitable relief must in justice and good conscience come to their defense?

*Injunctive Relief*

Preliminarily, it is to be remembered that, when courts are called upon to employ their injunctive authority, they must utilize this power with great caution. We have said:

"The extraordinary remedy of an injunction is a far-reaching force and must not be indulged in under hastily contrived conditions. It is a delicate judicial power and a court must proceed with caution and deliberation before exercising the remedy." *Simpson v. Petroleum, Inc.,* Wyo., 548 P.2d 1, 3 (1976).

■ Injunctions are extraordinary remedies and are not granted as of right. In granting an injunction, the court exercises broad, equitable jurisdiction. *Brown v. J.C. Penney Co.,* D.C.Wyo., 54 F.Supp. 488 (1943). This discretion is, however, not unfettered, but "must be exercised reasonably and in harmony with well established principles," 43 C.J.S. Injunctions § 14, p. 772. Where injunctive relief is sought, it is the trial court that grants or denies it, based upon the facts—not the appellate court, 43 C.J.S. Injunctions § 14, pp. 769, 773. *Crosby v. Watson,* 144 Colo. 216, 355

P.2d 958 (1960); *Hansen v. Galiger*, 123 Mont. 101, 208 P.2d 1049 (1949).

## Equitable Estoppel

We then address the ultimate question which, when properly framed, asks whether, given the application of the statute of frauds, the facts of this case serve—under the doctrine of estoppel as applied in *Remilong v. Crolla*, supra—to overcome the mandate of the statute. We have said that equitable estoppel has as its purpose the prevention of injury arising from actions which have been acted upon in good faith in circumstances in which it would be inequitable to permit a retraction. *Pickett v. Associates Discount Corporation of Wyoming*, Wyo., 435 P.2d 445 (1967); *Crosby v. Strahan's Estate*, 78 Wyo. 302, 324 P.2d 492 (1958). We also said in *Crosby v. Strahan's Estate*, supra, that the basic purpose of the doctrine is to prevent fraud or its equivalent.

■ Fraud, we have held, must be clearly proved by the one alleging it. *Cone v. Ivinson*, 4 Wyo. 203, 33 P. 31 (1893). Fraud will never be presumed and will only be sustained on evidence that is clear and convincing. *State Farm Mutual Automobile Insurance Company v. Petsch*, 10th Cir., 261 F.2d 331 (1958). Finally, we have held that fraud cannot be imputed from facts that are as consistent with an honest intention since fraud must be demonstrated in a clear and convincing manner. See *White v. Ogburn*, Wyo., 528 P.2d 1167 (1974); *Fallon v. Wyoming State Board of Medical Examiners*, Wyo., 441 P.2d 322 (1968).

## Elements of Estoppel

In *Cheyenne Dodge, Inc. v. Reynolds and Reynolds Company*, Wyo., 613 P.2d 1234 (1980), we said, in essence, that the party who relies upon estoppel must be able to show that he or she lacks knowledge of the facts, is without means of discovering them, relies upon the action and representations of the party sought to be charged and must be able to demonstrate a changed position accompanying such reliance. See also *Wood v. Trenchard*, Wyo., 550 P.2d 490 (1976). We have said, with respect to the lack-of-knowledge element that ordinarily courts will not give effect to an estoppel where the parties were equally well informed as to the essential facts or where the means of knowledge were equally open to them. *Pickett v. Associates Discount Corporation of Wyoming*, supra, 435 P.2d at 447, citing 19 Am.Jur., Estoppel § 86, p. 742.

As applied to the case at bar, these concepts say, as does the teaching of *Remilong v. Crolla*, that estoppel should not be invoked to defeat the operation of the statute unless the record contains clear and convincing proof that appellees induced appellants to detrimentally purchase land in the First Filing through fraudulent misrepresentations upon which appellants relied and had a right to rely—changed position in consequence thereof—and that justice and good conscience require that the protections offered by the statute of frauds give way to the benevolent exception contemplated by the doctrine of promissory estoppel.

## Facts Most Favorable to Appellees

For all purposes, the issue of factfinding comes to us under familiar and often-announced rules. We do not consider the conflicting evidence of the unsuccessful party and we give to the evidence of the successful party every favorable inference which may reasonably and fairly be drawn from it. *Crown Cork & Seal Company, Inc. v. Admiral Beverage Corp.*, Wyo., 638 P.2d 1272 (1982); *City of Rock Springs v. Police Protection Association*, Wyo., 610 P.2d 975 (1980).

■ Evidence which this court is bound to consider and which mitigates in favor of the successful invocation of the statute of frauds and against the implementation of the doctrine of promissory estoppel may be summed up as follows: The Milatzos, when they first undertook to promote their subdivision, prepared a map of the proposed subdivided acreage which included the areas now designated as First Filing and

Country West Subdivision. See map, supra. The map was designated Milatzo Subdivision, and all residential lots shown on this map were described as being one-half acre in size. The Milatzos came upon hard financial times with respect to utilities, services and financing, and were forced to reduce the size of the previously intended development area to the area now represented on the map as the First Filing. Consistent with the original plans of the Milatzos, the First Filing area was platted into lots which were one-half acre in size, and the plat was accepted by the appropriate officials and was duly recorded. On the other hand, the Milatzo Subdivision map containing the entire originally mapped area never became a recorded plat.

During the time that the First Filing lots were being sold, David L. Ayers, acting in his own behalf, and Key Real Estate Co., Ltd. and its employees, acting in behalf of the Milatzos, were in possession of the original Milatzo Subdivision map and various appellants were shown or otherwise became acquainted with the map. However, the court could have found and, it must be assumed, did find that, while the map was, in one way or another, made available to appellants for observation during the time that they were contemplating the purchase of lots in the First Filing, neither David Ayers, nor the Milatzos nor the agents of the Milatzos made promissory representations upon which the appellants could or should have relied to the effect that the area now designated as Country West would ultimately be platted and burdened with restrictions which provided that the lots would be no smaller than one-half acre in size. This is admitted by the appellants in their brief, where they say:

> "Although neither the Milatzos nor their agents specifically *promised* plaintiffs that all of the lots would be half-acres, the agents of the Milatzos showed the plaintiffs plats whereon all of the lots were shown to be half-acres, and the agents of the Milatzos told the plaintiffs that all the lots were half-acres."

Other facts which mitigate against the invocation of the doctrine of promissory estoppel to defeat the application of the statute of frauds are these: The trial court could have found and, we assume, did find that the appellants knew or are chargeable with the knowledge that neither their deeds nor their title insurance policies carried any provisions which indicated that any recited protections were intended to reach beyond the parameters of the First Filing area. The covenants which were on file pertained to the First Filing lots only and this was or should have been apparent from the action of the parties and the language of the covenants themselves.

### Conclusion

In this case, unless the district court could come to the conclusion that the conduct of Ayers, the real estate agents and the Milatzos was fraudulent in nature, that the proof of fraud was clear and convincing, that the appellants did rely, to their detriment and, under the circumstances, were warranted in relying upon the appellees' misrepresentations, and, finally, that the appellants were not as well informed as to the essential facts and the means of knowledge was not open to them, the district judge should not exercise his equitable authority to restrict the free use of the Milatzos' land.

We agree with the district court that the elements of equitable estoppel were not proven in this case. There is no clear and convincing proof of fraudulent misrepresentation. There is no clear and convincing proof that the appellants lacked knowledge of all the facts pertaining to the Milatzos' use of and right to use their land or that the appellants did not have the means to discover all the pertinent and relevant facts concerning the purpose, intention and status of the Milatzos' land utilization. Lastly, unlike *Remilong v. Crolla,* supra, under the facts of this case we find that the statute of frauds should apply because the oral representations were not such as to cause the application of the doctrine of promissory estoppel to be invoked to

" * * * 'avoid the fraud, and accomplish what justice and good conscience demand.' " *Remilong v. Crolla,* supra, 576 P.2d at 465, citing *Metcalf v. Hart,* 3 Wyo. 513, 27 P. 900, 913, aff'd 31 P. 407 (1891).

Affirmed.