## L. A. SCOTT ELLIOT, Appellant, v. GEORGE C. WHITMORE and JAMES WHITMORE, Respondents.

APPELLATE COURT—POWER OF REVIEW—IN EQUITY CASES—WHEN FINDINGS OF LOWER COURT SET ASIDE—APPROPRIATION OF WATER—BY WHAT GOVERNED—RULE—ESTOPPEL—WHEN ARISES BY REPRESENTATION AS TO FUTURE CONDUCT.

1. APPELLATE COURT: POWER OF REVIEW: IN EQUITY CASES: WHEN FINDINGS OF LOWER COURT SET ASIDE. The Supreme Court has full power to review all questions of law and fact in equity cases, and to set aside the judgment of the lower court, if, in the opinion of the Supreme Court, such judgment is not supported by the evidence;[1] but this rule is subject to the principle that when such cases have been regularly tried before a court of chancery, and it has found on all material issues, such findings will not be disturbed unless so manifestly erroneous as to demonstrate oversight or mistake which materially affects the substantial rights of appellant.[2]

2. APPROPRIATION OF WATER: BY WHAT GOVERNED: RULE. An appropriator of water is not confined to an appropriation simply for the amount of land irrigated during the first year of his diversion. The extent of an appropriation of water is determined by the reasonable necessity for the use of the water, by the intention of the appropriator, followed by a reasonable diligence in executing such intent, and by the beneficial purpose for which the appropriation is made.[3]

---

[1]Whittaker v. Ferguson, 16 Utah, 242.

[2]McKay v. Farr, 15 Utah, 261; 49 Pac. 649.

.    See    also, Klopenstine v. Hays, 20 Utah, 45; 57 Pac., 712; Larsen v. Onesite, 21 Utah, 38; 59 Pac. 234.

[3]Hague v. Irrigation Co., 16 Utah, 421.

3. ESTOPPEL: WHEN ARISES BY REPRESENTATION AS TO FUTURE CONDUCT. An estoppel will not arise simply from a breach of promise as to future conduct, or from a mere disappointment of expectations. The only case in which a representation as to the future can be held to operate as an estoppel is where it relates to an intended abandonment of an existing right.

## Decided April 10, 1901.

Appeal from the Seventh District Court, Emery County.— *Hon. Jacob Johnson,* Judge.

Action to determine the rights of the respective parties to the waters of a certain creek and for an injunction restraining defendants from interfering with plaintiff's water rights during the irrigation season. From a judgment for defendants plaintiff appealed.

AFFIRMED.

*Messrs. Zane & Rogers* and *John M. Zane, Esq.,* for appellant.

In equity causes the appellate court "may go behind the findings of the trial court and consider all the evidence, decide on which side the preponderance thereof is, ascertain whether or not the proof justifies the findings and decree, and make such findings and decree as should be made in the judgment of the appellate court." Whittaker v. Ferguson, 16 Utah 241; Van Pelt v. Park, 18 Utah 141; North Point C. I. Co. v. Utah & S. L. C. Co., 16 Utah 247.

Unless the right to all the waters of Grassy Trail Creek had vested in defendants, the third finding of facts and conclusions of law and the decree appealed from are erroneous. And it is not sufficient that defendants might have the primary right to take all the waters of the creek during dry times, but

they must have the right to it all the time without any intervals, and at wet times, at all the times that plaintiff might appropriate it and use it for a useful purpose. The Compiled Laws of Utah, 1888, secs. 2780, 2781.

Under the statute of California and other states, notices of appropriation may be posted and recorded, and the appropriator then has forty days within which to commence his ditch; but he is required to prosecute its construction with reasonable diligence and use the water. Becker v. Marble Creek Irri. Co., 15 Utah 225; Hague v. Nephi Irrigation Co., 16 Utah 421; Murray et al. v. Tingley, 50 Pac. Rep. 723; DeNecochea v. Curtis, 80 Cal. 397.

The defendants' representations and conduct constitutes an equitable estoppel, an estoppel *in pais*. Kirk v. Hamilton, 102 U. S. 68; Insurance Co. v. Mowry, 96 U. S. 544, 547 and 548.

We do not think it necessary to multiply authorities on this point. It was not necessary to set up in the complaint the facts constituting the estoppel. It was not necessary at common law, and the statutes of Utah do not require it. 1 Taylor's Law on Evidence, 115 sec. 92; 2 Estoppel and Res Judicata (Herman), sec. 1305, p. 1448.

If at any time the land for which the water was appropriated to irrigate did not require all of the appropriation, the law required the defendants to allow it to run down the creek to plaintiff's land for his use. Compiled Laws of Utah, 1888, division 1 of section 2781; Manning v. Fife, 17 Utah 232.

*Messrs. Brown & Henderson* for respondents.

We do not dispute the statement made by counsel that in an equity case the court can consider the facts and reverse a

decree if it is not justified by the evidence.    The Constitution of this State and the statute give the right to appeal in equity cases upon the facts.    The rule, however, is that when the district court has found the facts, the Supreme Court will not set them aside unless they are clearly erroneous.    The district judge sees the witnesses, hears the testimony and can estimate the value of the witnesses testimony better than the Supreme Court can.    McKay v. Farr, 49 Pac. 649; Stahn v. Hall, 10 Utah 400; Dooly Block v. Transit Co., 9 Utah 31; Whitesides v. Green, 44 Pac. 1032.

### STATEMENT OF FACTS.

The complaint in this action was filed September 8, 1887, and alleges that plaintiff is and was the owner of certain described lands in Emery county, and that in July, 1885, for the purpose of irrigating and cultivating said lands, he appropriated all of the waters then running in a stream called Grassy Trail Creek, and that in July, 1885, he diverted and conveyed upon said land all of the waters of said creek except so much as the complaint alleges the defendants are entitled to.

The complaint further alleges that the defendants own land situate above plaintiff's land on the creek; that prior to the above appropriation plaintiff and defendants had made certain appropriations, which the complaint alleges to be as follows:    That the defendants were entitled to a primary right to six and one-half acres and no more, and that the plaintiff was entitled to a secondary right to a quantity sufficient to irrigate twenty-five acres, and that the defendants were then entitled to an additional right to irrigate twenty-two .and three-fourths acres, "and that, subject to the foregoing rights and appropriations, the plaintiff is entitled to all waters flowing in said creek."

Plaintiff also alleges that a large portion of his land is under present cultivation, and that it is his intention to proceed to further cultivate the entire tract of land owned by him, amounting to about 1,240 acres of land, and that he has already expended several thousand dollars in appropriating and diverting the said waters to the lands, and in making permanent improvements upon the same.

Plaintiff claims that defendants have unlawfully diverted all the waters of said creek from the channel and from plaintiff's land, and refuse to allow any part of the stream to flow down upon his land, and that the defendants threaten to continue such wrongful diversion, to plaintiff's damage.

Wherefore plaintiff prays a decree determining the rights of the parties to the waters of the creek, and for an injunction restraining defendants from interfering with plaintiff's water during the irrigation season.

Defendants' answer denies the material allegations of the complaint and especially that plaintiff in July, 1885, or at any other time, or at all, appropriated all or any of the waters running in Grassy Trail Creek, but on the contrary the defendants allege that in 1879 they diverted for irrigation purposes all and every part of the waters flowing in said creek upon the lands belonging to them; that all of said waters were then and ever since have been necessary for the proper cultivation of their lands, and that they have continuously, during the irrigation season of each year, so diverted all of said waters. Defendants deny specifically that plaintiff at any time diverted or appropriated a sufficient or any quantity of the waters of said creek to irrigate twenty-five acres of land, or any amount whatever; and they deny that plaintiff is entitled to any rights in or use of the waters of said creek during the irrigation season; but on the contrary the defendants allege that they are so entitled. Defendants deny the unlaw-

ful diversion and damage, and pray that they be adjudged the owners of all the waters flowing in the creek during the irrigation season of each year, and that the plaintiff be enjoined from the use or diversion of any of said water during such irrigation season.

The evidence is very voluminous, and somewhat contradictory, but it shows in substance that the defendants commenced the occupation of their lands in 1878, and that they built a house and corral and erected some fences and cleared some lands for cultivation during the winter of that year. In the spring of 1879 they built a ditch three-fourths of a mile long from the creek in question, and diverted water to the upper part of their lands, and irrigated a few acres, upon which they successfully raised corn. During the winter following defendants cleared some more land in the upper field, and in the spring of 1880 their ditch was somewhat enlarged and straightened, and nearly the whole upper field irrigated and cultivated. That same year the plaintiff began to occupy his land for sheep herding purposes, erected a stable, and used about eleven and one-half acres for meadow, said meadow having upon or near it some springs known as Big Springs. In 1881 defendants cultivated and irrigated all of the upper field, and cleared part of the middle field. The plaintiff that year fenced his meadow, and tried to irrigate it by means of the springs, but as they only watered part of the land, he constructed and completed in the fall a small ditch from Grassy Trail Creek to his land, and diverted some water through such ditch, after defendants had used such water. During the following winter the defendants finished clearing their middle field and fenced it, and in the spring of 1882 continued their ditch to such field, and that year cultivated and irrigated both fields. Plaintiff did some work on his ditch that year, and once diverted water from the creek to his meadow, but did not

otherwise use the water at all. In 1883 defendants cleared part of their lower field, and cultivated and irrigated the upper and middle fields, while plaintiff failed to use any water on his land that year at all. During the following winter defendants cleared some of their lower field, and continued their ditch to such field. In 1884 they cultivated and irrigated the upper and middle field, and probably a part of the lower field. That year the plaintiff enlarged his ditch, and ran water through it from the creek and onto his pasture. · During that winter defendants finished clearing their lower field, and in 1885 they cultivated and irrigated all three fields. In April or May of that year plaintiff and defendant George C. Whitmore met upon the land in question, and some conversation was engaged in between them, the effect of which was that defendants did not intend increasing their cultivation; that there was then a good flow of water in the creek, but that it would soon be less. Plaintiff claims that in addition to this conversation he further told Whitmore that he (plaintiff) was intending to cultivate largely, and to take out a large ditch and control the creek, to which Whitmore replied that that was all right, and that thereupon plaintiff asserted his right to the use of the water after defendants' primary water right to the upper field, but stated that if defendants were not going to increase their cultivation that he (plaintiff) would not bother about such right, to which Whitmore replied: "Go ahead; we won't quarrel about it." This additional part of the conversation Whitmore denies. Plaintiff claims that, relying upon this conversation, he commenced in the summer of 1885 the construction of a "big ditch" higher up on the creek than the first one constructed by him, but which ditch was not completed that year. He also broke up about one hundred acres of farming land above the Big Springs, and tried to raise a crop without irrigation, but failed. It was plaintiff's intention to construct a series

of ditches, and cultivate and irrigate at all times as much land as he could out of 1,280 acres then controlled by him. He has, also, since said conversation, made valuable improvements upon the premises. It appears that an additional ditch, called Wales Ditch, was also commenced by plaintiff that year, which ditch was situated between his other two ditches. In January, 1886, plaintiff and defendant George C. Whitmore had another conversation in Nephi, in which plaintiff wanted Whitmore to give him a written agreement regarding plaintiff's rights in the waters of the creek, but Whitmore declined, and plaintiff thereupon desired him to come to Salt Lake City and see him about the matter. Whitmore failed to go, although plaintiff telegraphed him repeatedly; but finally plaintiff, knowing that he was attending a funeral in Salt Lake City, waited for him, and in the evening accompanied him to the back rooms of a saloon, and thereupon sent for an attorney, and on his arrival plaintiff again requested Whitmore to sign a written agreement as to their water rights, which Whitmore again declined, after which plaintiff threatened to take the matter into court. During that year defendants cultivated and irrigated their entire field, and probably five or six acres more, in rounding off the corners of their lower field. The plaintiff completed his big ditch this year, but the dam going out in the spring it was not put back until August, and, in the fall or late summer, water went through the ditch and upon plaintiff's premises, but no crop was secured on the farming land. In 1887, defendants again cultivated and irrigated all their cleared lands until September, when they were served with an injunction in this action. Plaintiff irrigated the meadow from the creek through the Big Ditch, but got no water at all upon his farming land. That fall plaintiff also plowed and sowed 500 acres of farming land. It appears from the evidence that the stream in question is a very small one

except during freshets and high water in the spring and fall, and that at times it is insufficient to irrigate all of defendants' lands, or to even fill defendants' ditch, which is about a foot and a half deep, and from one and a half to two feet wide.

The trial resulted in a decree for the defendants, awarding to them the ownership by a prior appropriation of all the waters of said creek except in high water, and during such season their ownership extended to water sufficient to fill their ditch. From such decree the plaintiff appeals to this court assigning as his principal ground of reversal that the evidence is insufficient to support the third finding of fact as made by the trial court. That finding reads as follows:

"3. That Grassy Trail Creek is a natural stream of water flowing from the mountains northeast of the lands of the defendants above described and in a southwesterly direction through said lands; that the said creek is fed from springs and rains and the melting snows in the mountains; that during the months of April and May of each year and during the heavy showers of rain said creek is high and contains large quantities of water, but that during the remaining seasons of each year said stream is a small stream, the water therein is low and contains but little water; that during the year 1879, the defendants began the cultivation of their said lands and to irrigate the same from the waters of said creek and for that purpose appropriated the waters of said creek by the construction of a dam across said creek and a ditch from said dam to and upon said lands and by means of said waters raised crops of corn and other cereals, hay and vegetables and have so continued from said date to the present time; that in the year 1880 the defendants enlarged their ditch so that the same was eighteen inches wide on the bottom, two feet wide at the top and eighteen inches deep and capable of carrying all the water of said creek except in the high water season; that ever since

said year, 1880, the defendants by means of said ditch have diverted and used all the waters of said creek, (except in the seasons of high water as aforesaid) and applied the same for the irrigation of their said lands and that said water is not more than sufficient for that purpose, and that said water has been applied to a beneficial use, to-wit: that of irrigation for agricultural purposes; that at no time did the defendants or either of them relinquish to the plaintiff any part of said water."

After stating the facts, the opinion was delivered by

ROLAPP, D. J.—The appellant in this case invokes the doctrine that this court "may go behind the findings of a trial court, and consider all the evidence, decide on which side the preponderance thereof is, ascertain whether or not the proof justifies the findings and decree, and make such findings and decree as should be made in the judgment of the appellate court." Whittaker v. Ferguson, 16 Utah 241.

We reaffirm that doctrine, and assert that this court has full power to review all questions of law and fact in equity cases, and if in our opinion the judgment of the lower court in such cases is not supported by the evidence, we may and will set such judgment aside. Still, that doctrine is governed by the further principle that "when such cases have been regularly tried before a court of chancery, and if it has found on all material issues, we will not disturb such findings unless they are so manifestly erroneous as to demonstrate oversight or mistake which materially affects the substantial rights of the appellant." McKay v. Farr, 15 Utah 261.

After a careful investigation of the record in the case before us, we have, however, absolutely failed to find any reason for setting aside the judgment of the lower court. In fact, it is difficult to see how that court, from the evidence adduced, could have reached a different conclusion. The testi-

mony effectually shows a continuous user of the waters of the creek by the defendants through their ditch constructed in 1879, and enlarged to its present capacity in 1880. It is true that since such time the irrigated area of land has increased, and that they did not at first have their entire premises prepared for cultivation; but from the commencement they continued with unabated vigor to clear land and irrigate the same year after year, extending their cultivation without enlarging their ditch, and during the irrigation season using all of the waters of said creek upon such lands. Naturally, and from the testimony, we know that when irrigation is first introduced upon arid land, it will moisten a much smaller area than it will after the soil has become saturated. Consequently, it is a matter of economy of time and increase of results to gradually extend the cultivated area below a stream, so far as the waters in such stream will permit, and continue to increase such cultivation as limited by the original intent of appropriation as evidenced by the size of the ditch and the conduct of the parties, until the full capacity of the stream has been attained, or until some other person has completed an appropriation of the surplus waters of the stream. So far as plaintiff's efforts up to the commencement of this suit, in connection with the appropriation of the waters of this creek, are concerned, they consisted simply in the occupation, pasturing, clearing and plowing of lands near such creek, the user of certain springs upon a small part of the lands, the user of some of the water in 1881, after defendants' user, the user of the water once in 1882, some indefinite user in 1884 (at a time when the water was high), and the unsuccessful user of water in the fall of 1886. Even that little diversion of water from the creek was by the plaintiff applied upon only eleven and a half acres of land, which also received irrigation from the so-called Big Springs. Under such circumstances we can not say that the

Elliot v. Whitmore et al.

plaintiff acquired any rights in the creek superior to the rights of the defendants. We see no reason why a settler in a new country may not appropriate the waters of an adjacent creek without having the lands he contemplates using the waters upon in a condition fit for irrigation at the time of his first diversion of such waters, at least until some other settler completes a successful, necessary and beneficial use of the then unappropriated waters of such creek. He is not confined to an appropriation simply for the amount of land irrigated during the first year of his diversion. The extent of an appropriation of water is determined by the reasonable necessity for the use of the water, by the intention of the appropriator, followed by a reasonable diligence in executing such intent, and by the beneficial purpose for which the appropriation is made. Hague v. Nephi Irrigation Co., 16 Utah 421.

Nor do we think that the evidence warrants the conclusion that defendants were estopped by their statements to plaintiff in May, 1885, from pursuing the full execution of their original intent of appropriation. At the time of making such statement, the entire lands of defendants were ready for cultivation and irrigation, and so far as the testimony relating to actual facts rather than the scientific guesses of an expert shows, the entire waters of the creek were necessary for the successful irrigation of such lands. Besides, the entire waters were then actually being used upon the defendants' lands, while at the same time plaintiff's small, indefinite and intermittent user of the waters was of such small moment that even plaintiff himself stated that he would not bother with even an assertion of his right if defendants would desist from further extending their cultivated area. The testimony shows that no further extension of cultivated ground was made by defendants, except as they rounded off the corners of one of the

fields. It is clear from the conversations themselves that at that time plaintiff had in view rather the imaginary possibilities of the waters of the creek than an interference with the then user of such waters by defendants. Even taking these conversations in the most favorable view for appellant, there was absolutely no statement upon the part of the defendants of an intended abandonment of an existing right. It was merely an acquiescence in the plaintiff's proposition that he would thereafter use all the waters of the creek not then being used by defendants. It has frequently been held that an estoppel will not arise simply from a breach of promise as to future conduct, or from a mere disappointment of expectations. The only case in which a representation as to the future can be held to operate as an estoppel is where it relates to an intended abandonment of an existing right. Union Mut. Life Ins. Co. v. Mowry, 96 U. S. 544; Allen v. Rundle, 50 Conn. 9.

The remainder of the errors assigned by appellant we do not feel called upon to decide, they not having been discussed by appellant in his brief.

We see no error in the record in this case, and the judgment of the lower court ought to be affirmed, and it is so ordered, and that the appellant pay the costs. *Baskin, J.,* concurs.