## UTAH MERCUR GOLD MIN. CO. et al. v. HERSCHEL GOLD MIN. CO. et al.

No. 6533.   Decided March 16, 1943.   (134 P. 2d 1094.)

*Christenson & Christenson,* of Provo, for appellants.

*Ned Warnock* and *Cheney, Jensen, Marr & Wilkins,* all of Salt Lake City, for respondents.

WOLFE, Chief Justice.

Demurrers to both the first and second causes of action of the second amended complaint in this case were sustained, the first on the ground that it did not state a cause of action; the second on the ground that the statute of frauds applied. The plaintiff tired of pleading over, stood on his second amended complaint and a judgment of dismissal was entered. From the judgment of dismissal plaintiff appeals.

The complaint does not easily lend itself to analyzation. Penetrating its verbiage the situation as set out is substantially that plaintiff Mercer in 1934 went into possession of certain mining claims belonging to defendant corporation in pursuance of a written lease and option. The terms of the lease are not set out nor is a copy of it made part of the complaint. It is then alleged that the trustees of the then defunct defendant corporation in 1935 orally represented and agreed while plaintiff Mercer was in possession and after he had conveyed his rights to the plaintiff corporation that if he continued to develop and mine ore as provided in the original lease he "would be permitted to continue in the operation of said claims to realize upon said development work until such time as he could from said operations purchase the claims for $60,000.00," or find a purchaser. He says he continued to do so on that representation. This had the aspect both of an oral extension of the original lease and of an estoppel. The complaint sets out that from time to time during the years 1935 to 1940 inclusive, the said trustees and said Charles Mercer, *"in furtherance of, and in order to carry out the said oral agreement and understanding,* executed certain written leases in favor of said Charles Mercer and said plaintiff purporting to extend the terms of the original lease and option for successive period." (Italics added.) Unfortunately the contents of the written leases are not set out nor are copies of them attached as exhibits. The phrase "purporting to extend the terms of the original writ-

ten lease," etc., is the pleader's conclusion as to what said leases accomplished. The italicized portion gives us a hint of plaintiffs' theory. They evidently conceive of an oral understanding made during the term of a written lease dated July 13, 1934, which enlarged and extended it and that all the written leases thereafter were extensions of said original lease and were made to carry out said oral agreement. The respondents very aptly suggest that if written agreements were made to carry out oral arrangements these written agreements ordinarily would supplant the oral agreements and no evidence to modify or enlarge them could be given. The apparent theory of the plaintiffs that there can be an overarching oral agreement and segments of it reduced to writing from time to time is somewhat novel. We need not under our disposition of this case determine whether such can be done. When these written agreements are disclosed the real situation may be clearer. Considering that plaintiffs had written extensions of a former lease and option, or new leases and options, the last of which was enacteed in 1940 and expired April 1st, 1941, the plaintiffs allege a representation by the trustees made before the expiration of the last extension that they would extend the period of operating possession of plaintiffs for 5 years beginning April 1st, 1941, and that they would execute a formal and written extension to that effect. Plaintiffs further allege a consideration in support of that agreement, to wit: "development work already done and further new worthwhile development." For purposes of demurrer, we must take all allegations of fact as true. If the trustees in 1935 orally requested the plaintiffs to do work of development beyond that required to get out the ore which was the basis of plaintiffs' revenue, and plaintiffs agreed to do so and performed in that regard in exchange for the promise that they could continue until $60,000 in royalties paid the purchase price or until a mutually satisfactory sale was arranged, then such work performed in pursuance of such promise would support a promise to permit plaintiffs to

continue operations under the same terms for a five-year period from April 1st, 1941, and would be in harmony with the purposes of the previous arrangement. In any event subsequent worthwhile development work done at defendants' request or the promise to do it would support an agreement for the extension of the written lease. There is sufficient consideration to support the oral contract.

Is sufficient performance alleged to take it out of the Statute of Frauds?

By the weight of authority when a complaint shows that the contract relied on was oral and within the Statute of Frauds, but the facts alleged are not sufficient to take it out of the statute, a demurrer lies on the ground that the complaint does not state sufficient facts. In this way the defense of the statute may be raised by demurrer, 25 R. C. L. 747, para. 399; *Slusser* v. *Aumock,* 56 Idaho 793, 59 P. 2d 723; *Skeen* v. *Van Sickle,* 71 Utah 577, 268 P. 562.

The contract to extend or renew the written lease for 5 years, was oral. It was tantamount to an oral contract to make a lease and option for five years, from April 1st, 1941. We think such oral agreement to make a written lease is governed by the statute of frauds the same as if an oral lease was made. An oral agreement to make a contract which must itself be in writing is itself within the statute of frauds. *Paul* v. *Layne & Bowler Corp.,* 9 Cal. 2d 561, 71 P. 2d 817.

We are therefore finally thrown back on the inquiry as to whether the complaint, revealing that the contract for an extension of the written lease for five years was oral, also alleged facts sufficient to take it out of the statute. The acts which are alleged to constitute part performance must be in pursuance of the oral contract which it is claimed said performance saves from the death sentence of the statute. In *Besse* v. *McHenry,* 89 Mont. 520, 300 P. 199 it was stated

"Part performance which will avoid statute of frauds may consist of any act which puts party performing in such position that non-performance by other would constitute fraud."

While the matter is not without doubt, we think the allegations in paragraph 10 meet this requirement. It is alleged that "during the year 1940 and 1941 and particularly prior to April 1st, 1941, plaintiffs continued to explore and develop said claims and carried on and *established new worthwhile development* by doing road work, exploration, tunnel work, and shipping of overburden and by making arrangements whereby said claims could be profitably operated by shovel and otherwise, at large expense *extra* to plaintiffs *and all in reliance* upon said oral agreement and understanding and *said additional representations made by said trustees in January or February of* 1940 *aforesaid.*" (Italics added.) We think that the fair intendment of this allegation is that extra work beyond that necessary to comply with the lease which by its terms expired April 1st, 1941, was performed.

The oral agreement is not too indefinite to determine what was to be done. It stated definitely that the trustees agreed to extend for 5 years from April 1st, 1941, a written lease and option. The written lease and option were definite. The agreement to extend it five years was also definite.

Complaint is made that from the prayer it is impossible to determine what relief the plaintiffs want—whether a declaratory judgment, judgment quieting title or specific performance. The plaintiffs pray that (1) the court declare and decree the respective rights of the parties in and to said property and that (2) defendants be enjoined from interfering with plaintiffs' possession and continued operation and development of said mining claims; that (3) the rights of the plaintiffs be adjudged and decreed and quieted as against the defendants; that (4) plaintiffs be permitted to mine, operate and develop the said property for the mutual benefit of the plaintiffs and defendant corporation,

pursuant to the real understanding and agreement and for *at least five years from April* 1st, 1941 and that (5) the expenditures of plaintiffs be secured and protected and that (6) plaintiffs be granted such other and further relief as the court may deem just and equitable.

The prayer seems designed to obtain a declaratory judgment but no more so than would be involved in any action to quiet title to a claimed interest which in effect always involves a declaratory judgment of rights on which the operating judgment is based. We see, therefore, no inconsistency between the element 1 and 3 of the prayer. Element (2) of the prayer contains a prayer for injunction, a common attendant to an action to quiet title. Element (4) would permit plaintiffs to operate which would naturally follow if they had the sort of interest in the property which they claim. Element (5), that their expenditures be secured, would be accomplished by permitting plaintiffs to remain in operative possession of the property which in turn would follow if it were declared that they had a right to do so. The fundamental question is, have they the right to remain in possession and develop, mine and sell ore and have the royalties applied to the purchase price or if sold with their consent, be paid for their interest to the extent at least of their expenses? In short have they any interest in this property which permits them to remain in possession as against the attempted ouster by defendants?

Respondents contend the prayer if granted would in effect require specific performance in that plaintiffs would be put in possession with leave to continue development. They contend, that the principle of mutuality of remedy prevents the court from granting specific performance because if the plaintiffs had refused to go on with the agreed development the court could not compel them to do so. We see no merit in the court refusing to grant performance to a petitioner where he has performed his part simply because the respondent might not or could not

obtain specific performance if the shoe had been on the other foot.

In *Genola Town* v. *Santaquin City*, 96 Utah 88, 80 P. 2d 930, 934, we said

"The old doctrine of mutuality of remedy is a concrete example of a rule which has been so eroded by necessary exceptions as to leave it more of a vestige than a substantiality."

It is very difficult to see why a person who refuses to perform where the other has performed may stand up in court and say: "Even though he has done what the contract required of him and I have not, you should not make me perform because if he had not performed and I had performed or tendered performance I could not obtain the remedy of specific performance." The remedy of one should not depend upon the hypothetical case of what another could demand if the situation were different.

In this case we have endeavored without setting out verbatim portions of a very long pleading to tell the plaintiffs' legal story as it is reflected in their complaint. We have concluded that the complaint states a cause of action in that part which alleges an oral promise to extend the terms of a definite written lease together with allegations whose fair intendment is that extra work above what the written lease itself called for was performed. We do not mean to preclude the possibility that the complaint may also state a cause of action on the basis that all during the period of plaintiffs' life under the written leases he was operating on the strength of a promise that he should be permitted to mine the property until he had ample opportunity to pay the purchase price through accumulated royalties or reasonable opportunity to obtain a buyer of the claims who would be satisfactory to both parties and that he did very substantial extra work of development and blocking out on reliance of such oral promises. Whether the legal label given to the basis of plaintiffs' claimed right

to continue in possession of the property is equitable estoppel, irrevocable license, or an oral contract for a written extension taken out of the statute of frauds because of partial performance is not so important. These concepts are but forms designed to serve a more ultimate principle that no one shall induce another to act on promise of reward for such act and then after obtaining the benefit of the same repudiate the contract. *Kennedy* v. *Combined Metals Reduction Co.*, 87 Utah 532, 51 P. 2d 1064. It is sometimes hard to affix a legal label to the basis of a claimed right because some situations do not lend themselves readily to being forced into definite legal patterns. Other allegations of the complaint, or the whole thereof, taken together may also support an application of such ultimate principle. In such case the oral agreement to effectuate a lease and option of a definite content for a definite period may have been intended to feed the alleged over-arching agreement. The written leases, if and when introduced may of course, tell an entirely different story. At all events the cause of action of the complaint stands good as against a general demurrer.

The judgment of the lower court is set aside with instructions to reinstate the second amended complaint and permit such further amendments and pleadings as by law or discretion of the court the parties may be entitled to.

Costs are granted to the appellants.

McDONOUGH and MOFFAT, JJ., and CLARENCE E. BAKER, District Judge, concur.

LARSON, Justice (concurring).

I concur in reversal of the judgment and in the order made. This concurrence is limited to the specific statement that the first clause of action is good against a general demurrer, and the second cause of action is not vulnerable to demurrer on the grounds of the statute of frauds.