RAVARINO v. PRICE et al.

No. 7882. Decided July 29, 1953. (260 P. 2d 570.)

560

See 37 C.J.S. Frauds, Statute of, sec. 246. Improvements sufficient to constitute part performance, 49 Am.Jur., Statute of Frauds, sec. 449; 33 A.L.R. 1489.

*Mulliner, Prince & Mulliner,* Salt Lake City, *Edward L. Mulliner, H. L. Mulliner* and *J. R. Mulliner,* Salt Lake City, for appellants.

*Wilford M. Burton,* Salt Lake City, for respondent.

WOLFE, Chief Justice.

Action by the plaintiff, Angelo Ravarino, against the defendants, Harry Price, Jr., Mrs. Harry Price, Jr., his wife, and Mrs. Marcus Parr, his sister, to compel the conveyance to him of two tracts of real estate owned by defendants at 225 and 235 West Fifth South in Salt Lake City, Utah. The lower court found the facts substantially as alleged in the complaint and decreed specific performance. Giving the plaintiff the benefit of all inferences and intendments arising in his favor from the evidence, the facts may be summarized as follows:

Mr. Price and Mrs. Parr are the owners of the above mentioned property, each owning an undivided one-half interest as tenants in common. During the course of preliminary negotiations, Mr. Price, in May of 1950, executed a listing agreement for the sale of the property with one Lewis F. Hansen, a real estate broker; several months later Mr. Hansen submitted to Mr. Price a written offer by plaintiff for the purchase of the property for $18,000. Mr. Price discussed the offer with his wife who rejected it, expressing a reluctance to sell unless other income property could be found in which the proceeds of the sale could be invested.

Subsequently, Hansen submitted an "Earnest Money Receipt and Agreement" to Mrs. Price and Mrs. Parr providing for the sale to plaintiff of the property belonging to defendants for the purchase price of $19,000. Mrs. Price and Mrs. Parr on or about September 21, 1950, signed this agreement, which is in words and figures as follows:

"Earnest Money Receipt
And Agreement
Salt Lake City, Utah, 9/21/1950

Received From A. Ravarino the sum of $1000.00 Dollars to secure and apply on the purchase of the following described property:

1—Lot 165 x 165 at 235 W. 5th So. For the purchase price of $19000.00 Dollars.

The balance of the purchase price shall be paid as follows: $18,000.00 upon furnishing good and marketable title. Interest at 5% per annum on the unpaid portions of the purchase price to be included in the prescribed payments and possession given IMM. [immediately] or before 60 days.

Property taxes for the current year shall be adjusted on pro-rata calendar basis, seller to pay for period from January 1st to date of closing, purchaser from date of closing to December 31st. Rents, insurance, interest, water and other expenses of said property shall be pro-rated as of date of closing.

No exceptions.

Contract of sale or instrument of conveyance to be made on the approved form of the Salt Lake Real Estate Board in the name of Angelo Ravarino. The following items are included in the purchase price and are to remain with the property: Present buildings. This payment is made subject to the approval of the Seller and unless so approved within 10 days from date hereof, the return of the money herein receipted shall cancel this sale without damage to the undersigned.

In the event the purchaser shall fail to pay the balance of said purchase price or complete said purchase as herein provided, the amounts paid hereon shall, at the option of the Seller, be retained as liquidated and agreed damages.

It is understood and agreed that the terms written in this receipt constitute the entire Preliminary Contract between the Buyer and Seller and that no verbal statements made by a representative of the Agent relative to this transaction shall be construed to be a part of this transaction unless incorporated in writing herein. It is further agreed that the execution of final transfer papers abrogate this Earnest Money Receipt.

The Seller agrees in consideration of the efforts of the agent in procuring a purchaser to pay said agent the rate of commission as established by the Salt Lake Real Estate Board.

Hansen Realty Co. Agent<br>by L. F. Hansen

We do hereby agree to carry out and fulfill the terms and conditions on the above receipts specified, the seller agreeing to furnish a good

marketable title with abstract to date, or policy of title insurance at the option of the seller and to make final conveyance by sufficient deed. If either party fails so to do, he agrees to pay the expenses of enforcing this agreement, including a reasonable attorney's fee.

Mrs. Harry Price

Mrs. Marcus Parr Angelo Ravarino

 Seller Purchaser

Approved Salt Lake Real
Estate Board"

The lower court found that Mr. Price was advised of this transaction; that he stated it was acceptable to him and he approved the terms; and that the signatures of the women were not conditional upon Mr. Price signing subsequently.

The parties recognized that the transaction could not be consummated until the signature of Mr. Price was obtained. In the course of frequent solicitations by Hansen, Price manifested his intention to sign. One particular telephone call by Hansen to Price plays an important part in this action. The plaintiff was anxious to purchase a small strip of land bordering the defendants' property belonging to one Terry, which strip was to be utilized as a railroad spur, in connection with the Price property. Before purchasing this "Terry Strip," plaintiff wanted full assurance that Mr. Price would complete the sale of defendants' property in compliance with his oral promise. Mr. Hansen, therefore, called Mr. Price, and according to the testimony of Hansen, the following conversation ensued:

"Answer: [by Hansen] Yes, I called Harry [Price] and I said:

'Now it looks like everything is okey and I just want to be sure there won't be any backing out, because I don't want to close the deal on the Terry property. * * *'

"I told Harry that, and then after the first part of September, or the last part of September, I told him we were ready to close that now. * * *

\* \* \* \* \* \* \* \*

"I said: 'If there is no objections I will go ahead and close it.' [The Terry deal]

"He said: 'That is fine, go ahead.'

"I said: 'I want to be sure because if Ravarino has that it will be like a goat farm, because he won't have any right-of-way to it.'

"So he assured me it was all right and we closed it right close to that date, I think October 5th is when we made the deed [to the Terry property]."

As indicated by the last line of the testimony, on October 5, 1950, the plaintiff purchased the "Terry Strip" for $1,796.00 in reliance on the oral promise of Mr. Price that he would sign the Earnest Money Receipt providing for the sale of defendants' property to plaintiff. It is established that the use of the "Terry Strip" is extremely limited without possession of the defendants' property.

For several weeks after the purchase of the "Terry Strip" by Ravarino, attempts were made to obtain the signature of Mr. Price on the Earnest Money Receipt who consistently reiterated his intention to sign it. Ultimately, Mr. Price refused to execute the warranty deed submitted to him and refused to accept the purchase price of $19,000 which was tendered. He reportedly had discovered that the property was "hot."

In their original and amended answers defendants denied many of the facts set forth above. It is unnecessary for us to resolve the controversies with respect to the facts but it may be noted that a review of the entire record reveals some evidence in support of the propositions that: (1) the Earnest Money Receipt was not the intended agreement, but rather the true agreement was a trade rather

than a sale, and as such did not pass the stage of oral negotiations; (2) the promise by Mr. Price that he would sign concerned only the contemplated trade rather than the sale; and, (3) the Earnest Money Receipt relied on as the agreement was not filled in when signed by Mrs. Price and Mr. Parr. We do not mean to infer that the findings of the trial court are not supported by competent evidence; we express no opinion on that point, it being unnecessary to do so to reach our decision.

In bar of the plaintiff's claims for specific performance, defendants pleaded the statute of frauds. Implicit in the Conclusions of Law of the lower court is that Price is precluded from asserting the statute. The implication seemingly rests on the principle of estoppel—estoppel in pais. The facts on which estoppel in pais are said by plaintiff to rest are as follows:

That the "Terry Strip" was purchased in reliance on the oral representations of Mr. Price that he would sign the Earnest Money Receipt, and plaintiff has been defrauded because (1) that strip is allegedly worthless without title to defendants' land, (2) real estate commissions and taxes have been expended on the "Terry Strip," (3) during the intervening months prior to and during this law suit he has lost the use of the $19,000 purchase price for defendants' property, and (4) he has lost the benefit of the bargain. Plaintiff asserts that since he has been defrauded, the doctrine of estoppel in pais should apply.

Defendant maintains that when the legislature stated that courts have the power to take oral agreements out of the statute of frauds and compel specific performance "in case of part performance thereof," Utah Code Ann. 1953, 25-5-8, the mandate is clear that the doctrine which may be utilized to remove the bar of the statute upon oral agreements to convey realty is part performance and not estoppel.

We think it unnecessary to spend time over the semantic aspects of the problem. Both "estoppel in pais" and "part performance" (really itself a species of estoppel) have their roots in fraud.[1]

Generally, the doctrine of equitable estoppel is applicable only when a misrepresentation is made as to past or present facts; however, an exception is recognized when a misrepresentation as to the *future* operates as an abandonment of an existing right on the party making the misrepresentation. 21 C.J. 1142; Bigelow on Estoppel (6th Ed.) 637. Actually this exception is a limited application of the doctrine of promissory estoppel. 31 C.J.S., Estoppel, § 80. The general principle of promissory estoppel is embodied in the Restatement of the Law of Contracts,

---

[1] As stated by this court in *Utah Mercur Gold Min. Co. v. Hershel Gold Min. Co.*, 103 Utah 249, 134 P.2d 1094, 1097, the policy considerations underlying the doctrines of part performance and estoppel are indistinguishable: "Whether the legal label given to the basis of plaintiff's claimed right to continue in possession of the property is equitable estoppel, irrevocable license, or an oral contract for a written extension taken out of the statute of frauds because of partial performance is not so important. These concepts are but forms designed to serve a more ultimate principle that no one shall induce another to act on promise of reward for such act and then after obtaining the benefit of the same repudiate the contract."

The thesis is given further weight by this court in *Bamberger Co. v. Certified Productions Inc.*, 88 Utah 194, 48 P.2d 489, 492: "As stated by Mr. Justice Cardozo, then justice of the Court of Appeals of New York, in *Imperator Realty Co. v. Tull*, 228 N.Y. 447, 127 N.E. 263, 266: 'Sometimes the resulting disability has been characterized as an estoppel, sometimes as a waiver. * * * We need not go into the question of the accuracy of the description. * * * The truth is that we are facing a principle more nearly ultimate that either waiver or estoppel, one with roots in the yet larger principle that no one shall be permitted to found any claim upon his own inequity or take advantage of his own wrong. * * * The statute of frauds was not intended to offer an asylum of escape from that fundamental principle of justice.' "

Sec. 90, under the heading of "Informal Contracts Without Assent or Consideration," as follows:

"A promise which the promissor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by the enforcement of the promise."

Promissory estoppel is historically rooted as a substitute for consideration, *Allegheny College* v. *National Chautauqua County Bank*, 246 N.Y. 369, 159 N.E. 173, 57 A.L.R. 980, per Cardozo, C.J., citing 1 Williston on Contracts, Secs. 116, 139; however, it is applied where the promise of the promisor as to his future conduct constitutes the intended abandonment of an existing right on his part. In *Waugh* v. *Lennard*, 69 Ariz., 214, 211 P.2d 806, the defendant induced the plaintiff to refrain from commencing action on a promissory note by representations that he would not invoke statute of limitations as a bar. The court held the defendant was estopped from raising the defense of the statute, basing its decision on cases where the promisor had manifested an intention to abandon an existing right, and quoting the Restatement of Contracts, Sec. 90. For similar illustrations, see *Schroeder* v. *Young*, 161 U.S. 334, 16 S. Ct. 512, 40 L. Ed. 721; *Faxton* v. *Faxton*, 28 Mich. 159; *Dickerson* v. *Colgrove*, 100 U.S. 578, 25 L. Ed. 618; 3 Williston on Contracts, Sec. 689, p. 1988. The common element in these cases is that the promise as to future conduct constitutes a manifestation that the promissor will abandon an existing right which he possesses. It is apparent that an attempt to apply this doctrine to the oral promise of Mr. Price to convey the property is factually impossible unless the phrase is to be distorted beyond meaning.

Although some courts, including this court by dicta, have announced the proposition that the only instance when an estoppel may arise as to future conduct is when there is an expressed intention by the promisor to abandon an

existing right, *Elliot* v. *Whitmore,* 23 Utah 342, 65 P. 70, 90 Am. St. Rep. 700, *Union Mut. L. Ins. Co.* v. *Mowry,* 96 U.S. 544, 24 L. Ed. 674, Williston states that the doctrine of promissory estoppel has been extended beyond its historical role

"to permit recovery on the contract by one who has relied to his detriment on the promise of defendant to execute and deliver a sufficient memorandum." 2 Williston on Contracts, Sec. 533A.

Assuming this court will disregard the dicta in the case of *Elliot* v. *Whitmore,* supra, and extend the doctrine to the new limits noted by Williston, we must look to the reasons which prompted the extension of the rule.

Illustrative of the extension of the rule is *Interstate Co.* v. *Bry-Block Mercantile Co.,* D.C., 30 F. 2d 172, and the widely cited case of *Seymour* v. *Oelrichs,* 156 Cal. 782, 106 P. 88, 95. The latter case was an action to recover damages for breach of an oral contract of employment. The defendant invoked the bar of the statute of frauds because the contract was not to be performed within one year. The court found that the plaintiff had resigned a lucrative position as captain of detectives of the San Francisco Police Force to accept employment with the defendant; that the defendant not only knew the plaintiff had been so employed but that fact induced the defendant to hire him. The court held the defendant estopped from pleading the statute of frauds even though it recognized the rule that

"the acts, conduct, or statements relied on as constituting ground for the estopped must generally be acts, conduct, or statements amounting to a representation of fact, as distinguished from mere expression of opinion or intention, or mere promise of something to be done in the future."

The California court stated that the general rule applies

"even where a party, relying simply on the honor, word or promise of the other, has changed his position to his injury because thereof."

However, the court reasoned that the

"application of the rules as to equitable enforcement must to a considerable extent be governed by the circumstances of each case,"

and distinguished these facts from the general rule as follows:

"Here, certainly, * * * was a representation of a future intention absolute in form, *deliberately made for the purpose of influencing the conduct of the other party* * * *. [Italics added.]

"While the question is by no means free from doubt, we believe that it should be held that there were sufficient facts in this case to support a conclusion that the promise here to give such a written agreement as was required by the statute was made under such circumstances that the irrevocable surrender by plaintiff or his position in the police department in full reliance thereon made it, in the eye of equity, a binding contract, the subsequent repudiation of which by defendants would constitute such a manifest fraud as would justify the application of the doctrine of equitable estoppel."

The binding thread which runs through these cases, distinguishing them from the general rule that a mere promise as to future conduct will not work an estoppel, is the promise designedly made to influence the conduct of the promisee, tacitly encouraging the conduct, and although the conduct of the promisee constitutes no actual performance of the oral contract itself, it is something that

"must be done by plaintiff before he could begin to perform, as was known to the defendants." *Kraft* v. *Rooke*, 103 Cal.App. 552, 284 P. 935, 937.

In the instant case, the initiative and solicitation were by Hansen acting for Ravarino, with Mr. Price merely acquiescing or at best reiterating his oral promise to convey. Moreover, the purchase of the "Terry Strip" was not a step that Ravarino was reasonably required to take before acquiring title to the Price property as clearly shown by the fact that as far as Ravarino and Hansen were concerned, acquisition of the Price property came first, with the purchase of the "Terry Strip" occurring late in the negotiations, long after

Mrs. Price and Mrs. Parr had signed the written contract, presumably binding themselves and Ravarino.

The case of *Vogel* v. *Shaw*, 42 Wyo. 333, 294 P. 687, 689, 75 A.L.R. 639, illustrates the fringe area in which the doctrine of promissory estoppel has been invoked to remove the bar of the statute of frauds. In this case, which is relied on by respondent, the facts establishing the estoppel did not constitute anything which had to be done before the promisee could begin to perform. Williston refuses to classify the case as an abandonment of an existing right and cities it as contrary to the general proposition that

"a mere refusal to perform an oral agreement within the Statute, however, is not such fraud as will justify a court in disregarding the Statute even though it result in hardship to the plaintiff." 2 Williston on Contracts, Sec. 533A.

This was an action by a lessee to recover an amount held in escrow which was paid by the sub-lessee of defendants' property. The plaintiff acquired the status of lessee from defendant's predecessor in title, and plaintiff orally promised defendant that if defendant would purchase the property, plaintiff would assign his interest in the sub-lease to the defendant. Prior to the time the defendant completed the purchase, the plaintiff was asked to complete a written assignment, and plaintiff relied:

"I promised to give you those leases as soon as you obtained a deed to the property. You haven't obtained a deed yet and until you do, I want to keep them, because if you don't get the deed, I don't want you to have the leases".

Plaintiff objected to the testimony on the ground that the agreement was oral and barred by the statute of frauds. The court held an estoppel applied, quoting from *Union Mut. L. Ins. Co.* v. *Mowry*, supra, 96 U.S. 544, 24 L. Ed. 674, as follows:

"An estoppel from the representations of a party can seldom arise, except where the representation relates to a matter of fact,—to a

present or past state of things. * * * The only case in which a representation as to the future can be held to operate as an estoppel is where it relates to an intended abandonment of an existing right, *and is made to influence others,* and by which they have been induced to act. * * *

"The doctrine of estoppel is applied with respect to representations of a party, to prevent their operating as a fraud upon one who has been led to rely upon them They would have that effect, if a party who, by his statements as to matter of fact, or as to his intended abandonment of existing rights, *had designedly induced another to change his conduct or alter his condition* in reliance upon them * * *. (Italics added.)

A dissent in the case reasoned that the offered proof was merely an oral promise, not a representation of an existing fact nor an abandonment of an existing right, and stated:

"If the promise be one which under the statute of frauds must be in writing, the promisee can protect himself in advance by insisting on compliance with the satute. * * *

"With this decision as precedent it is difficult to see why every contract void under the statute of frauds may not be made effectual by estoppel when acted on by the promisee and not performed by the promisor."

The majority opinion was criticized on the same ground by a case note in 44 Harvard Law Rev. 1147, where the editor reasoned that it constituted judicial legislation. Even if this court should follow the majority opinion, we still do not have an estoppel under the facts of the case at issue. There is nothing in the conduct of Mr. Price or in the record which indicates any design or interest on his part that the "Terry Strip" be purchased.

Thus we conclude the general rule applies that an estoppel will not arise simply because of a breach of promise as to future conduct or because of a disappointment of expectations on an executory agreement. 2 Pomeroy on Equity Jurisprudence (4th Ed.) Sec. 808; Bigelow on Estoppel (6th Ed.) Sec. 636, 21 C.J. 1142; 31 C.J.S., Estoppel, § 80. In *Elliot* v. *Whitmore* supra, this court announced the same doctrine:

"Even taking these conversations in the most favorable view for appellant, there was absolutely no statement upon the part of the defendants of an intended abandonment of an existing right. It was merely an acquiescence in the plaintiff's proposition * * *. It has frequently been held that an estoppel will not arise simply from a breach of promise as to future conduct, or from a mere disappointment of expectations." [23 Utah 342, 65 P. 74.]

With particular reference to the statute of frauds, this court in *Papanikolas* v. *Sampson*, 73 Utah 404, 274 P. 856, 861, 862, quoted from 12 R.C.L. pp. 237, 238, as follows:

"There can be no fraud where there is nothing wrong, and fraud cannot be deduced or inferred from that which the law pronounces honest. Nor can it be predicated upon acts which the party charged has a right by law to do, provided he pursues such right by lawful means, nor upon the nonperformance of acts which by law he is not bound to do, whatever may be his motive, design, or purpose, either in doing or not doing the acts complained of * * *. Nor, as a general rule, can fraud be predicated upon the failure to perform a promise or contract which is unenforceable under the statute of frauds, since in such case the promisor has not, in a legal sense, made a contract, and hence has the right, both in law and in equity, to refuse to perform."

The authorities are against the proposition that nonperformance of a promise is fraud which will establish an estoppel in pais. Under the facts alleged the plaintiff could not make a case of equitable estoppel under these principles of law, since the oral representations of Mr. Price that he would complete the negotiations constituted nothing more than a promise as to future conduct, not a representation as to material and existing fact nor the expression of an intent to abandon an existing right. Further, we have examined the cases relied on by plaintiff, and think that the doctrine they announce is either consistent with the foregoing principles of equitable estoppel or where the facts show possession of the premises and improvement of the land by the party claiming the fraud, which brings us to a consideration of the doctrine of part performance, as before stated a species of estoppel.

Turning now to a consideration of the doctrine of part performance, whereas equitable estoppel is technically limited to situations where there is a misrepresentation of a material fact or the abandonment of an existing right by declaration or conduct, substantial and true part performance works an exclusion of the *oral promise* to convey realty from the statute of frauds. The doctrine is to be applied with great care, paying particular attention to the policy expressed in the statute of frauds and historical precedent where the limits have been defined by the process of inclusion and exclusion. In *Price* v. *Lloyd*, 31 Utah 86, 86 P. 767, 772, 8 L.R.A.N.S. 870, this court said:

"Courts of equity, in establishing the doctrine invoked by plaintiff, have not, by any means, intended to annul the statute of frauds, but only to prevent its being made the means of perpetrating a fraud. In order that a plaintiff may be permitted to give evidence of a contract not in writing, and which is in the very teeth of the statute and a nullity at law, it is essential that he establish [in equity], by clear and positive proof, acts and things done in pursuance and on account thereof, exclusively referable thereto, and which take it out of the operation of the statute."

And in *Burns* v. *McCormick*, 233 N. Y. 230, 135 N.E. 273, 274, the Court of Appeals of New York, through Mr. Justice Cardozo, announced:

"The peril of perjury and error is latent in the spoken promise. Such, at least, is the warning of the statute, the estimate of policy that finds expression in its mandate. Equity, in assuming what is in substance a dispensing power, does not treat the statute as irrelevant, nor ignore the warning altogether. It declines to act on words, though the legal remedy is imperfect, unless the words are confirmed and illuminated by deeds. A power of dispensation, departing from the letter in supposed adherence to the spirit, involves an assumption of jurisdiction easily abused, and justified only within the limits imposed by history and precedent. The power is not exercised unless the policy of the law is saved."

See a similar view against the erosion of the statute in Browne on the Statute of Frauds (5th Ed.) Sec. 492.

A careful analysis of the cases will aid in defining what constitutes part performance in the framework of the facts of the instant case. The act relied upon by plaintiff to invoke the doctrine is the purchase of a strip of land to be used as a railroad spur in conjunction with the █ land which Mr. Price orally promised to convey. The doctrine, in its broadest scope, is that acts will constitute sufficient part performance if they are clearly referable to some contract existing between the parties, in relation to the subject matter in dispute, and as a result of these acts, the plaintiff has been defrauded. *Price* v. *Lloyd*, supra; *Hargreaves* v. *Burton*, 59 Utah 575, 206 P. 262, 33 A.L.R. 1481; *Hogan* v. *Swayze*, 65 Utah 380, 237 P. 1097; *Latses* v. *Nick Floor, Inc.*, 99 Utah 214, 104 P.2d 619; *Utah Mercur Gold Min. Co.* v. *Herschel Gold Min. Co.*, 103 Utah 249, 134 P.2d 1094. A less liberal view is that the term "part performance" is to be taken literally, and the performance must be something required in the identical contract, *Knoff* v. *Grace*, 68 Colo. 527, 190 P. 526, 10 A.L.R. 1492; *Forbes* v. *Los Angeles*, 101 Cal. App. 781, 282 P. 528.

This doctrine has found little support because many of the strongest cases, those where improvements have been erected on the land by a plaintiff in possession, do not involve any part performance at all, literally speaking. However, in the jurisdictions where the more liberal view is accepted, the courts require that the operative fact relied upon must be more than a mere collateral matter, one which cannot be reasonably accounted for except on the postulate that a contract exists. The rule frequently applied is stated in Pomeroy on Specific Performance (2d Ed.) page 180, as follows:

"The improvements must be of a kind which would naturally and reasonably be done under a contract, so as to indicate the existence of a contract to account for them; they must be made on the faith of the contract and must of course be subsequent to it." See also Browne on Statute of Frauds (5th Ed.) Sec. 460.

Thus in *Price* v. *Lloyd*, supra (31 Utah 86, 86 P. 770), where the plaintiff took possession of property under an oral promise by defendant to convey, and expended approximately $2,000 on improvements such as papering of rooms, painting, fencing and construction of chicken coops, this court denied specific performance on the ground that the acts could reasonably be explained as merely for the comfort and convenience of a tenant-at-will and held that:

"* * * the making of valuable, or substantial, or beneficial improvements by the donee in possession, or the doing of other analogous acts which would render a revocation and refusal to complete inequitable, is essential to the enforcement of a parol gift of land. It is also essential that the parol agreement or gift should be established by clear, unequivocal and definite testimony, and the acts claimed to be done thereunder, should be equally clear and definite and referable exclusively to the contract or gift."[2]

[2]The decision involved a verbal gift, falling within the statute requiring a gift of realty to be in writing; however, the plaintiff contended that a promise supported by consideration existed, prompting the court to deal with gifts and contracts in announcing the principle quoted.

For an expression of the same rule on similar facts, see *Hargreaves* v. *Burton,* supra.

In *Graves* v. *Goldthwait,* 153 Mass. 268, 26 N.E. 860, 861, 10 L.R.A. 763, the plaintiff and her six sisters were tenants in common of several tracts of land, and the plaintiff made an oral agreement whereby she would pay the sisters a stipulated sum in consideration of their conveyance to plaintiff of their interests. Five of the sisters complied with the oral agreement; the sixth refused. The plaintiff contended that she had purchased the land in reliance upon the representations of the defendant that she would convey, which should constitute sufficient part performance. The court upheld the defense of the statute of frauds on the

ground that the performance of the other contracts were purely collateral matters. The court said:

"The reasoning by which a part performance of an oral contract for the sale of land has been held to take it out of the statute has never been extended to a partial or complete performance of collateral contracts."

It is to be noted that possession by the plaintiff is regarded as an important fact, one which is generally directly referable to the contract, and when combined with permanent and valuable improvements which are representative of the existence of an oral contract, virtually every jurisdiction will grant specific performance. The same limitation, of course, is placed on the plaintiff's possession as is found when improvements are relied upon: it must be of such a nature that it would not have been given without the presence of an oral contract to convey. *Price* v. *Lloyd*, supra; *Hargreaves* v. *Burton*, supra. Whether or not the other facts are given efficacy without the element of possession is not fully settled in the courts. Some jurisdictions hold that possession is an indispensible element, *Northwestern Lumber Co.* v. *Grays Harbor & P. S. R. Co.*, D.C., 208 F. 624 while others indicate the possession is only ordinarily necessary. *Blakely* v. *Sumner*, 62 Wash. 206, 113 P. 257. We do not pass on this point. However, assuming acts in the nature of general improvements are sufficient without the element of possession, when it is lacking this court must be convinced that no reasonable doubt exists as to whether or not the acts of improvement are explainable on some basis other than the hypothesis of an oral contract. The reason for the rule is well established in the common experience of mankind to which the enactment of the statute of frauds bears witness: the possibility of fraud and uncertainty in oral promises to convey realty makes in incumbent on the courts to be hesitant in applying a general exception to diverse factual situations. While the fundamental basis of the doctrine of

part performance is to prevent fraud, historical precedent has drawn the line where evidentiary facts are not sufficient to show an oral contract was made. The plaintiff here did not acquire possession, nor is the purchase of the "Terry Strip" an act of such a nature that explanation on some ground other than the existence of an oral contract is unreasonable. A reasonable man observing the acquisition by plaintiff of the "Terry Strip" would not be required to say that the purchase was an incident of ownership of the defendants' property, but rather an act equivocal under the circumstances. The argument gains weight by reference to the fact that the grantor of the strip (Terry) had no interest in the defendants' property, and the plaintiff acquired the right, title and interest which the vendor possessed, an interest more nearly explicable on the ground of speculation, perhaps coercion, or as the record discloses, reliance upon the zealous attempt of a real estate agent to close a deal, than on the basis of ownership of defendants' property.

Since Mr. Price is not bound on his oral promise and the statute of frauds is operative, what is the status of the land with respect to Mrs. Parr who did in fact sign the contract and who owns the property with Mr. Price as tenant in common? The finding on this point is that the women signed unconditionally, and particularly that the signatures of the women were not conditioned on obtaining the signature of Mr. Price.

There is no evidence to support this finding. The testimony at the trial, the nature of the transaction, and all the surrounding circumstances point to the unavoidable conclusion that the women signed conditionally. Therefore, since Mr. Price is not bound, neither are the women.

The second count in the complaint is an action at law for money damages; however, plaintiff cannot obtain relief on that basis. It is well settled in this jurisdiction that the doctrine of part performance is not available

in an action for damages on an oral contract to convey land. *Baugh* v. *Darley*, 112 Utah 1, 184 P.2d 335.

Nor does the complaint state a cause of action in unjust enrichment since it is obvious that defendants have obtained no benefit. We note in the plaintiff's behalf, however, that when it became apparent that the rights of the parties could not be settled without litigation, defendants offered to purchase the "Terry Strip" for $1,796.00, which was the amount expended by the plaintiff in acquiring the land. The offer was affirmed in the answer and reiterated in this appeal. We presume that the "Terry Strip" will be valuable to the defendants as a right of way as it would have been to the plaintiff, in which case the former may desire to keep open their offer to buy it from him.

Reversed and remanded with instructions to enter findings in accordance with this opinion.

Costs to appellants.

McDONOUGH, CROCKETT, HENRIOD and WADE, J.J., concur.